**In re Ulysses E. SMITH, SS#: 246–86–2774, Helen W. Smith, SS#: 248–98–5228, Debtors.**

**Bankruptcy No. S–84–00908–5.**

United States Bankruptcy Court, E.D. North Carolina.

Oct. 10, 1984.

**320**

William E. Brewer, Jr., Russell & Brewer, P.A., Raleigh, N.C., for debtor.

James H. Morton, Parham, Helms & Kellam, Charlotte, N.C., for Bankers Mortgage.

Trawick H. Stubbs, Jr., Stubbs, Perdue & Chesnutt, P.A., New Bern, N.C., trustee.

## MEMORANDUM OPINION AND ORDER DENYING OBJECTION TO CONFIRMATION AND CONTINUING AUTOMATIC STAY

A. THOMAS SMALL, Bankruptcy Judge.

A hearing was held in Raleigh, North Carolina on October 1, 1984 to consider the Objection to Confirmation and Motion for Relief from Stay filed by Bankers Mortgage Corporation ("Bankers"). Bankers contends that the proposed plan was not filed in good faith (11 U.S.C. § 1325(a)(3)), that the plan is not feasible (11 U.S.C. § 1325(a)(6)) and that Bankers' interests are not being adequately protected. The trustee supports confirmation of the plan, but did not participate at the hearing.

This court has jurisdiction and may enter final orders with respect to all of the issues raised. (28 U.S.C. §§ 1334, 157(b)(2)(G), 157(b)(2)(L)).

### FACTS

This is the debtors' fourth chapter 13 case. Pursuant to Rule 201 of the Federal Rules of Evidence, the court takes judicial notice of the case files in each of the debtors' four cases. The debtors' first three cases ([1] filed June 1, 1981 dismissed January 18, 1982; [2] filed March 10, 1982 dismissed January 24, 1983; [3] filed March 29, 1983 dismissed March 21, 1984) were all dismissed for failure to make plan payments.

The debtors' plan provides for 36 monthly payments of $750. Bankers, which has a claim for $53,566.40 secured by a first lien on the debtors' residence valued at $44,500, will have its arrearage of approximately $20,000 paid in monthly installments of $640.17 through the plan. Bankers' regular monthly payment of $461 will be paid "outside the plan." Interest on the Bankers arrearage shall accrue at the rate of

10% per annum. The arrearage will be satisfied in approximately 36 months.

Unsecured creditors will be paid 100% of their claims and receive *pro rata* distribution of the plan payments after costs and the payments to Bankers are made. The plan will be extended beyond 36 months if necessary to pay 100% of the unsecured claims.

The debtors have proposed that the stay be *automatically* lifted without further hearing if any plan payment or any regular payment to Bankers is missed. To date, the debtors are current with their plan payments.

Bankers contends that the plan is not feasible because of the debtors' demonstrated inability to make plan payments under three prior plans. This is a persuasive argument, but the debtors have convinced the court that circumstances have changed and that the debtors can now make the required payments. Mrs. Smith has been employed by Nationwide Insurance Company for 11 years and her net take home pay is $653 per month. Mr. Smith has recently been employed by the U.S. Postal Service and his net take home pay (including overtime) is $897.78. Mr. Smith also earns approximately $200 per month in the U.S. Army Reserve.

In the past, much of the debtors' financial problem was caused by Mr. Smith's medical disability—post-traumatic stress related to Mr. Smith's military service in Vietnam. As a result of that condition, Mr. Smith had difficulty maintaining employment. He has received medical treatment and believes he is now able to perform his duties with the U.S. Post Office. The court finds that Mr. and Mrs. Smith have regular income satisfactory to meet their expenses and to make the payments required by the proposed plan.

Bankers also contends that the debtors' multiple bankruptcy filings together with the debtors' failure to make mortgage payments and the debtors' efforts to avoid foreclosure amount to bad faith. Indeed, Bankers has not been treated fairly by the debtors.

When the first bankruptcy petition was filed, the debtors were approximately $10,000 in arrears in their payments to Bankers. The arrearage is now approximately $20,000.

Bankers has diligently attempted to pursue its rights under the deed of trust, but its efforts have been repeatedly blocked by new bankruptcy filings. In October of 1982, Bankers sought to lift the stay in the second bankruptcy case. After the second case was dismissed, Bankers commenced a foreclosure but a petition was filed on the date of the foreclosure sale. A foreclosure action was pending when the present chapter 13 case was filed.

Although Bankers may have been fully secured, as a result of accruing interest and collection costs, Bankers now has a claim which exceeds the value of its security. The value of the house is approximately $45,000 and Bankers' claim is $53,566.40. If the plan is not confirmed, or if the automatic stay is lifted, Bankers will suffer a loss on its loan. If the plan is confirmed and the debtors make the required payments, Bankers' claim will be paid in full.

Notwithstanding the multiple filings and the detrimental effects those filings have had on Bankers, the court finds that the plan has been proposed in good faith.

With respect to the debtors' obligations to provide adequate protection for Bankers' interests, the court finds that Bankers' interests are and will be adequately protected provided that all plan payments and all regular payments to Bankers "outside the plan" are met and provided the stay is automatically lifted if payments are not made.

Although there is no equity in the residence, the court finds that the house is needed for a successful rehabilitation.

**DISCUSSION AND CONCLUSIONS**

■ Multiple filings of chapter 13 cases for the purpose of delaying foreclosures

have become a problem in this and other districts throughout the country. The detrimental effect of repetitive filings to secured creditors is vividly demonstrated in this case. Repetitive filings and the debtor's treatment of his creditors prior to filing are factors which the court can consider in determining good faith. *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir.1982); *In re Puckett*, unpublished opinion, No. 83–0250, 4th Cir., (E.D.N.C.) September 14, 1984. The court, however, must weigh many factors in considering good faith. In this case, both debtors are employed. Mr. Smith not only will be working overtime at the Post Office, but he will also be earning extra money in the Army Reserve. The debtors' plan proposes to pay 100% of all unsecured claims. It will not be easy for the debtors to complete this plan, but with hard work and determination they can succeed. If they do succeed, all parties concerned will benefit.

◼ The court concludes that the requirements of 11 U.S.C. § 1325 are met, that the interests of Bankers are adequately protected, that the plan should be confirmed (as modified herein), and that the automatic stay should not be lifted at this time. Accordingly,

IT IS HEREBY ORDERED that the plan as proposed by the debtors and as modified herein shall be confirmed and the trustee is directed to prepare the standard confirmation form order within five days of the entry of this order; and

IT IS FURTHER ORDERED that the motion of Bankers Mortgage Corporation to lift the automatic stay is DENIED; and

IT IS FURTHER ORDERED that if during the next 18 months the debtors should fail to make any plan payment or should fail to make any regular payment to Bankers "outside the plan," the automatic stay of 11 U.S.C. § 362(a) shall be automatically lifted without further notice or hearing to permit Bankers to pursue any and all of its collection remedies.