**In re Suzanne Coleman MULLINS, Debtor.**

**Singer Asset Finance Co., LLC, Plaintiff,**

**v.**

**Suzanne Coleman Mullins, Defendant.**

**Bankruptcy No. 05–73530.**
**Adversary No. 05–07383.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Feb. 12, 2007.

John S. Edwards, Roanoke, VA, for Plaintiff.

Michael Dean Hart, Michael D. Hart, PC, Roanoke, VA, for Defendant.

## DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

The issue before the court is whether the Debtor is eligible for relief under Chapter 13 of the Bankruptcy Code pursuant to 11 U.S.C. § 109(e). The court conducted a hearing on the matter in Roanoke on December 7, 2006. At that time, the court took the matter under advisement. After due consideration of the evidence and authorities and for the reasons stated herein, the court finds that the Debtor is eligible to be a Chapter 13 debtor.

## BACKGROUND

On September 12, 2005, the Debtor filed an individual voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On April 28, 2006, the United States Trustee filed a motion to dismiss the Debtor's bankruptcy case under Section 707(b) for substantial abuse. Prior to the trial, the Debtor filed a motion to convert the case to Chapter 13. The court granted the motion to convert and entered an order converting the case to Chapter 13 on August 15, 2006. The Debtor filed a Chapter 13 plan on September 1, 2006, which provided for plan payments of at least $3,168 per month. A hearing on the confirmation of the plan is set for February 14, 2007.

At the time of her Chapter 7 filing, the Debtor disclosed that she owned four parcels of real property and that three of these parcels were owned along with her husband as tenants by the entirety. These three properties included vacant lots in Bland County, Virginia and two homes in

Roanoke, VA. The Debtor and her husband occupy one of these two homes as their marital residence. Their daughter and granddaughter live in the second home. The Debtor owned the fourth parcel, several burial plots, in fee simple. The Debtor claimed all of the real property as exempt.

Except for the marital residence, the schedules filed at the commencement of the case disclosed that the Debtor owned all of the real property free of any secured claims. Two deeds of trust, totaling $67,000, were listed as secured by the marital residence. The schedules also revealed that five creditors held unsecured claims, totaling $306,097.21. Of these unsecured claims, the Debtor disclosed that Singer Asset Finance (herein "Singer") held one claim in the amount of $274,000.[1] The Debtor also disclosed $683 as her total monthly income and that her non-filing husband had total monthly income of at least $7,303.24.[2]

Prior to the Debtor's conversion to Chapter 13, the Debtor amended her list of creditors.[3] On both occasions, the Debtor amended her list of creditors to include additional unsecured creditors. These amendments increased the total unsecured claims disclosed by the Debtor by $6,982.83 and $11,328.02, respectively.

On December 5, 2005, following the Debtor's first amendment, Singer initiated the above-captioned adversary proceeding against the Debtor to determine the dischargeability of a debt pursuant to Section 523(a) of the Bankruptcy Code.[4] The Debtor timely filed an answer.

---

1. Schedule E disclosed no creditors holding unsecured priority claims.

2. Schedule I listed the non-filing husband's employment income as $7,303.24 per month.

   In 1993, the Debtor won a $4.2 million lottery prize in the Virginia State Lottery, along with her husband and their daughter. The three shared the prize in equal parts, electing to receive payments of approximately $70,000 each per year for twenty years. In the years following, the Debtor and her daughter used much of their lottery receipts to pay for the medical treatment of the daughter's husband.

   As an apparent result of these expenditures, the Statement of Financial Affairs did not disclose any lottery payments made to the Debtor in 2003 or any year thereafter. However, it did disclose that the Debtor's husband received lottery payments of $70,474 in the years 2003, 2004 and 2005. It is unclear whether these amounts were pre- or post-tax. Regardless, these payments, which were not included as a part of the husband's income listed on Schedule I, increase the non-filing husband's income to an amount greater than his employment income alone.

3. These amendments were filed on November 29, 2005, and January 20, 2006.

4. According to the complaint, in 1998, the Debtor entered into a lending agreement with People's Lottery, the predecessor in interest of Singer. Under the terms of the lending agreement, the Debtor received a $197,746.15 loan from Singer and, in exchange, the Debtor agreed to repay the loan in equal payments of $47,778.84 per year over the following eight years. The Debtor also pledged her revenue stream due from the Virginia State Lottery through the year 2012 as collateral. After pledging this revenue stream to Singer as collateral, the Debtor requested the Virginia State Lottery Department to distribute the balance of her lottery proceeds to her in one lump sum payment. The Virginia State Lottery complied.

   The complaint alleges that the Debtor violated the agreement entered into between the two parties when she requested and received a complete distribution of her lottery winnings from the Virginia State Lottery after pledging these same winnings as collateral for her loan from Singer. Singer did not specify under which subsection of 11 U.S.C. § 523(a) it sought relief. The complaint did, however, allege that the transfer of funds from the Virginia State Lottery to the Debtor, after the Debtor had pledged this revenue stream as collateral, constituted a fraudulent conveyance.

Thereafter, on September 1, 2006, and prior to any hearing in the adversary proceeding, the Debtor filed Amended Schedules A and J. Amended Schedule A disclosed the same four parcels of real property described in the initial schedules. All information pertaining to the lots in Bland County and the burial plots remained unchanged. However, the disclosures in the amended schedules regarding the two homes did change. Amended Schedule A disclosed a secured claim in the amount of $218,843.84 on the marital residence, instead of the $67,000 originally disclosed. Amended Schedule A also disclosed a $337,990.00 secured claim on the second home, whereas the initial schedules disclosed no secured claim on this property. The Debtor also disclosed her interest in the second home as a joint tenant rather than tenant by the entirety. As such, the Debtor reduced the market value of her interest in the property by one-half or to $71,500.

On September 20, 2006, after filing her answer, the Debtor filed a motion to dismiss the adversary proceeding.[5] In response, Singer alleged, among other things, that the Debtor failed to qualify as a Chapter 13 debtor because she failed to satisfy the Chapter 13 eligibility require-

ments set forth in Section 109(e).[6] By agreement of the parties, this court held a hearing on the Section 109(e) eligibility issue on December 7, 2006.[7]

On December 6, 2006, prior to the hearing, the Debtor filed Amended Schedules D and F. Amended Schedule D disclosed that Suntrust Bank held a deed of trust on the second home in the amount of $97,000 and that Singer also held a judgment lien in the amount of $240,990 on the second home. The Debtor listed $194,990 of the Singer judgment lien as unsecured. Amended Schedule F removed Singer as an unsecured creditor. The remaining unsecured creditors that appeared on the original schedules, absent Singer, were the only unsecured creditors listed on Amended Schedule F. The creditors disclosed in the amendments to the list of creditors on November 29, 2005 and January 20, 2006 were not listed as creditors, either secured or unsecured, on Amended Schedules D or F. The unsecured claims on Amended Schedule F totaled $32,133.58.

At the December 7, 2006, hearing on the Debtor's motion to dismiss the adversary proceeding, Singer asserted that the payments made by the Debtor's daughter to

---

**5.** The motion to dismiss contends that the complaint, which initiated this adversary proceeding, fails to state a claim upon which relief may be granted. Specifically, the motion to dismiss argues that the grounds for nondischargeability cited by Singer were not in effect at the time of the Debtor filed her petition under Chapter 7 on September 12, 2005.

**6.** Singer alleged that the Debtor had no "regular income" and also exceeded the unsecured debt limit of $307,675. *See* 11 U.S.C. § 109(e). Singer also argued that the grounds for nondischargeability cited in its complaint were in effect at the time the Debtor converted from Chapter 7 to Chapter 13 on August 15, 2006 and that the applicable law is that in effect at the time of conversion to

Chapter 13, not the time of filing under Chapter 7. 11 U.S.C. § 348(a) is clear that conversion "does not effect a change in the date of the filing of the petition."

**7.** In raising eligibility under Section 109(e) as a response to the Debtor's motion to dismiss the adversary proceeding seeking to determine the dischargeability under Section 523(a)(2), the eligibility issue comes before this court in the context of the adversary proceeding. However, the decision here has ramifications for the future of the main case and this court's holding of the Debtor's eligibility to be a Chapter 13 debtor under Section 109(e) not only results in dismissal of the adversary proceeding, but also constitutes a determination of eligibility in the main case.

the Debtor each month did not constitute actual income. Singer submitted into evidence deposition testimony, taken on two occasions, where the Debtor stated that the money paid to her each month by her daughter did not constitute payments of rent, rather these payments constituted contributions to household finances, because the Debtor lists the daughter and granddaughter as her dependents.[8]

Singer also argued that the Debtor exceeded the Section 109(e) unsecured debt limit and that amendments made one day prior to the hearing were incorrect. Although Singer agreed that it had a partially secured judgment lien on the second home of the Debtor, it alleged that the amount claimed by the Debtor as secured was incorrect. Singer, however, presented no evidence to support its position.

The Debtor submitted no evidence in support of her eligibility, although counsel for the Debtor argued that Debtor's schedules and the bankruptcy case record supported Debtor's eligibility for Chapter 13 relief.

## DISCUSSION

This court has jurisdiction over the parties and the subject matter of this proceeding under 28 U.S.C. §§ 151, 157, and 1334. This is a case filed under title 11, and this court may hear and determine such proceeding under 28 U.S.C. § 157(b). Venue is proper in this District under 28 U.S.C. § 1409(a).

■ Only a debtor may file a voluntary petition for relief with the bankruptcy court. *See* 11 U.S.C. §§ 301–302. The Code contains certain criteria which define eligibility to be a debtor in Chapter 13. *See* 11 U.S.C. § 109. Therefore, to proceed under Chapter 13, a individual must

satisfy the requirements set forth in Section 109(e). *See, e.g., Terry v. Troxler,* 328 B.R. 460, 464 (M.D.N.C.2005).

■ Singer argues that the Debtor is ineligible for relief under Chapter 13, because the Debtor does not satisfy the criteria set forth by 11 U.S.C. § 109(e). The burden of establishing eligibility in bankruptcy under Section 109(e) lies with the party filing bankruptcy. *Montgomery v. Ryan (In re Montgomery),* 37 F.3d 413 (8th Cir.1994); *In re Mozer,* 1 B.R. 350 (Bankr.D.Colo.1979). At the December 7, 2006, hearing, the Debtor submitted no evidence in support of her eligibility. Counsel for the Debtor did, however, assert that the record before this court in the bankruptcy case would satisfy the Debtor's burden; but, he did not request the court take judicial notice of any part of the record.

Absent this court taking judicial notice of the record, the Debtor will be unable to establish that she is eligible for Chapter 13 relief. *Cf. Ohio Bell Tel. Co. v. Pub. Util. Comm'n of Ohio,* 301 U.S. 292, 301, 57 S.Ct. 724, 81 L.Ed. 1093 (1937) (taking judicial notice has the effect of "[relieving] one of the parties to a controversy of the burden of resorting to the usual forms of evidence," although this does not prevent the opposing party from disputing such by offering contrary evidence). Therefore, before addressing the substantive issues emanating from Section 109(e), the court must first determine whether it shall, or may, take judicial notice of the Debtor's bankruptcy case records, including the Debtor's schedules, in this adversary proceeding.

### Judicial Notice

■ A court may take judicial notice at its own discretion. Fed.R.Evid. 201(c).

---

**8.** This evidence was offered in connection with the eligibility requirement of Section

109(e) that the debtor must have "regular income."

Courts may properly take judicial notice *sua sponte* of their own records. *Matson v. Strickland (In re Strickland),* 230 B.R. 276, 282–83 (Bankr.E.D.Va.1999) ("[The] Court is duty bound to take judicial notice of its own records.") (citation omitted); *see In re Williams,* 106 B.R. 87, 88 n. 1 (Bankr.E.D.N.C.1989) (taking judicial notice that petitioner filed on the date stamped on the petition by the clerk); *In re Smith,* 43 B.R. 319, 320 (Bankr. E.D.N.C.1984) (taking judicial notice of the debtors' case files in their current and three prior cases). It is also well established that a court may take judicial notice of a bankrupt's schedules in an adversary proceeding arising from the same bankruptcy case. *Strickland,* 230 B.R. at 282–83; *Matter of Claxton,* 32 B.R. 219, 223 (Bankr.E.D.Va.1983). Accordingly, taking judicial notice of the records in the Debtor's bankruptcy case in this adversary preceding is proper.[9]

### Section 109(e)

An individual must satisfy the provisions of 11 U.S.C. § 109(e) to qualify as a debtor under the Bankruptcy Code. In order to proceed under Chapter 13, an individual must have a regular income *and* must owe noncontingent, liquidated debt of less than $307,675. *See* 11 U.S.C. § 109(e). Singer contends that the Debtor does not qualify as a debtor under Section 109(e) because she does not have a "regular income." Singer also contends that the Debtor does not owe noncontingent, liquidated unsecured debt of less than $307,675. If either argument proves successful for Singer, then the Debtor is unable to proceed under Chapter 13.

### Regular Income

■■■ Section 101(30) of the Bankruptcy Code defines an "individual with regular income" as an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13." *See* 11 U.S.C. § 101(30). The test for "regular income" is not the type or source of income, but its stability and regularity. *See, e.g., In re Antoine,* 208 B.R. 17, 19 (Bankr.E.D.N.Y. 1997); *In re Cole,* 3 B.R. 346, 349 (Bankr. S.D.W.Va.1980). The Debtor bears the burden of proof in establishing the ability to make the payments needed under the plan and must provide a sufficient factual basis for the court to determine both the regularity and stability of the income. *In re Norwood,* 178 B.R. 683, 691 (Bankr. E.D.Pa.1995) ("[I]t is incumbent on the debtor to satisfactorily establish that the contributions are sufficiently stable and regular to enable the debtor to make payments under a plan under Chapter 13."); *Matter of Anderson,* 21 B.R. 443, 446 (Bankr.N.D.Ga.1981) ("The debtor must provide some factual basis so that the court can determine both the regularity and stability of the debtor's income. The burden of proof is upon the debtor.").

■■ In this case, the Debtor is unemployed. The Debtor's Schedule I disclosed $683 in personal income at the time of filing, which is not enough to make complete payments under the terms of the Debtor's plan. Neither a debtor that has no income nor a debtor that has income insufficient to fund a plan is eligible for

---

9. The judicial notice taken runs to the information set forth in the schedules, but taking such notice is not dispositive of the truth of the information recorded on the schedules. This court must weigh the probative value of the schedules. *United States v. LaRouche,* No.

92–6701, 1993 WL 358525, at *4, 1993 U.S.App. LEXIS 23412, at *15–16 (4th Cir. Sept. 14, 1993) ("Under Fed.R.Evid. 201, adjudicative facts not subject to reasonable dispute could be judicially noticed at any point in proceedings, but they must be relevant.").

Chapter 13 relief.[10] *See In re Dant,* 9 B.R. 117, 119 (Bankr.E.D.Va.1981) ("If a debtor cannot make payments (or only *de minimus* payments) to his unsecured creditors for the reason that his income is insufficient to provide a regular payment to fund a plan, the debtor is not eligible for Chapter 13 relief under § 109(e) . . . ."); *see also* 11 U.S.C. § 101(30) ("The term 'individual with regular income' means an individual whose income is sufficiently stable and regular *to enable such individual to make payments under a plan* under chapter 13 of this title.") (emphasis added). Taken alone, these facts lend support to Singer's argument that the Debtor has no "regular income." However, the non-filing husband does have income.[11] With this in mind, the Debtor argues that the income of the non-debtor husband may be used to make her plan payments. The Debtor asserts that her schedules and a history of payments made to the Chapter 13 Trustee support a finding that the husband is willing and able to make the plan payments.

Debtor's argument is not without support.[12] A number of courts have held that an individual who derives income from a source other than wages is eligible to propose a Chapter 13 plan, but only if the individual's source of income is shown to be sufficiently "stable and regular" to enable payments under a plan. *See, e.g., In re Campbell,* 38 B.R. 193, 195 (Bankr. E.D.N.Y.1984).

■ Courts have held that gratuitous payments to a debtor by family members do not constitute regular and stable income for the purposes of Chapter 13 eligibility. *In re Antoine,* 208 B.R. 17, 19–20 (Bankr.E.D.N.Y.1997). For example, gratuitous payments are not sufficient to support eligibility under Chapter 13 where there is no history of payments, no evidence as to the nature of the relationship between the debtor and source of income provided, no evidence of willingness to contribute, and where the third party had no legal duty or other motivation to provide payment. *See generally, Id.* at 19.

■ Payments are sufficient to support eligibility under Chapter 13 when payment comes from a non-filing spouse, is made pursuant to some contractual or legal obligation, or where there is evidence of regular contributions having been made in the past. *In re Antoine,* 208 B.R. 17, 19–20 (Bankr.E.D.N.Y.1997) (finding that contributions of the non-debtor spouse demonstrated that the debtor had "regular income"); *In re Varian,* 91 B.R. 653, 654 (Bankr.D.Conn.1988) (finding that payments motivated solely by generosity may not be regular income, but where contributions are motivated by self-interest and a duty, payments are regular income for purposes of Section 109(e)); *In re Cohen,* 13 B.R. 350, 356 (Bankr.E.D.N.Y.1981) (finding husband's contributions based upon duties arising from matrimony).

■ In this case, the record supports the Debtor's assertion that, based on the contributions of the non-filing husband, she has income that is sufficiently "stable

---

10. The Debtor receives $683 each month from her daughter as contribution to household expenses. The Debtor's plan requires payments of an amount greater than $683 per month. Singer argued that the contribution each month did not constitute income. Whether this $683 constitutes income is not determinative of the issue of "regular income" in this case. Therefore, the court will not address this issue.

11. Singer has not raised this as an issue.

12. At the December 7, 2006, hearing, Counsel for Debtor directed the court's attention to two cases: *In re Antoine,* 208 B.R. 17, 19–20 (Bankr.E.D.N.Y.1997) and *In re Varian,* 91 B.R. 653, 654 (Bankr.D.Conn.1988).

and regular" to meet the eligibility requirements imposed by Sections 109(e) and 101(30) of the Bankruptcy Code. The non-filing husband receives employment income of $7,303.24 per month.[13] While the non-filing husband has not evidenced his willingness to contribute the financing necessary to fund the Debtor's Chapter 13 plan via an affidavit or testimony, he has evidenced such a willingness by enabling the Debtor to make her plan payments thus far.[14] *In re Bottelberghe,* 253 B.R. 256 (Bankr.D.Minn.2000) (nondebtor spouse's financial contributions to household constituted "regular and stable income" of debtor); *but cf. In re Campbell,* 38 B.R. 193 (Bankr.E.D.N.Y.1984) (approving confirmation of Chapter 13 plan subject to the submission of affidavits attesting the willingness and ability of family members to make contributions). The continuation of these payments throughout the duration of Chapter 13 is supported by the couple's mutual support during their marriage. *See In re Cohen,* 13 B.R. at 356 ("the state of matrimony imposes its own obligations"); *In re Varian,* 91 B.R. at 654–655 (contributions by debtor's spouse were sufficient regular and stable income, considering state law requiring support

during separation). The Debtor's lack of income in recent years, coupled with the income of her husband, also evidences a history of support, albeit outside bankruptcy. Lastly, the non-debtor spouse is a co-obligor on two properties, including the marital residence, along with the Debtor and, therefore, has an interest in making payments. Based upon these facts, the Debtor satisfies the burden of proving that she is an "individual with regular income" entitled to Chapter 13 relief.

### Debt Limit

■ In order to be eligible for relief under Chapter 13 of the Bankruptcy Code, a debtor must not only be "an individual with regular income," but must also "[owe], on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $307,675 and noncontingent, liquidated, secured debts of less than $922,975...." 11 U.S.C. § 109(e). In determining whether the Debtor owed less than $307,675 in unsecured debt, the court must add the amount of unsecured debt to the amount by which secured creditors are undersecured. *In re Balbus,* 933 F.2d 246, 247 (4th Cir.1991); *see* 11 U.S.C. § 506(a).[15]

13. The Statement of Financial Affairs also disclosed that the husband received $70,474.00 from the Virginia State Lottery in the years 2003 through 2005. It is not clear from the record whether such amounts are pre—or post-tax as they are not included on Schedule I.

14. This court takes judicial notice of the continuance order entered at the December 7, 2006, hearing, that required the Debtor to be current on her plan payments on or before December 29, 2006. *See* Bankruptcy Case Docket Entry # 71. If the Debtor was not current at such time, then the case was to be dismissed without further notice or hearing. *Id.* There is no evidence that the Debtor was not current at such time. As of the date of this decision, the case had not been dismissed, which evidences that the Debtor was

current as of December 29, 2006. The plan requires payments of at least $3,168 per month. Therefore, even if the $683 monthly payment made to the Debtor from her daughter constitutes income, this amount is significantly below the monthly payment required under the plan. Without evidence of any other source of funding, this court must conclude that Debtor is current on her plan because of the support provided by her husband.

15. 11 U.S.C. § 506(a) provides in pertinent part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, ... is an unsecured claim to the extent that the value of such

On the date of filing, the Debtor's schedules disclosed secured debts of $67,000 and unsecured debts of $306,097.21. The Debtor listed no secured claims as undersecured. Therefore, according to the schedules filed simultaneously with the bankruptcy petition, the amount of debt fell within the limits of 11 U.S.C. § 109(e). Thereafter, the Debtor twice amended her list of creditors, adding four unsecured claims. Together, the original unsecured debt and additional debt totaled an amount greater than that permitted under Section 109(e). The Debtor then filed Amended Schedules D and F. These amended schedules listed secured debts of $587,515.91 and unsecured debts of $32,133.58.[16] The Debtor listed the second home as undersecured; the undersecured portion totaling $194,990. Adding the undersecured debt of $194,990 to the unsecured debt of $32,133.58 results in a total unsecured debt of $227,123.58, which does not exceed the $307,675 limit of 11 U.S.C. § 109(e).

Despite this amendment, Singer argued that the Debtor failed to properly account for the undersecured claim on the second home. Singer asserted that the amount listed as undersecured was incorrect, although Singer conceded that its judgment lien was partially secured. Singer, however, presented no evidence as to the proper amount of the undersecured portion. Therefore, because Debtor's schedules, which are executed under penalty of perjury, are unchallenged by other evidence, this court must conclude that the debts listed in Debtor's schedules, as amended, are correct. Accordingly, under those facts, the debts listed by Debtor satisfy the debt limitations of Section 109(e).

## CONCLUSION

For the reasons stated above, the court holds that the Debtor meets the eligibility requirements of Section 109(e). Because 11 U.S.C. § 348(a) controls the date of the filing of the petition, this is a pre-BAPCPA case and the discharge provisions of 11 U.S.C. § 1328(a) permit discharge of Singer's claim of nondischargeability.[17] Accordingly, it is

## ORDERED:

That the above-captioned adversary proceeding is dismissed and the Debtor may remain in Chapter 13 pending confirmation of her proposed plan and subject to previous orders of the court containing requirements that must be met to avoid dismissal.

---

creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.
*Id.*

16. The amended schedule F did not list the four additional creditors that were added on November 29, 2005 and January 20, 2006.

17. The factual allegations in Singer's compliant do not allege any cause of action arising under 11 U.S.C. § 523(a)(5), (8), or (9). Therefore, Singer has failed to state a claim upon which relief may be granted.