Jonathan M. PELLEGRINO and
Carolyn Pellegrino a/k/a
Carolyn Grilli, Debtors.

Jonathan M. Pellegrino and Carolyn
Pellegrino, Appellants,

v.

John Boyajian, Chapter 13
Trustee, Appellee.

BAP No. RI 09–042,
Bankruptcy No. 09–11535–ANV.

United States Bankruptcy
Appellate Panel
of the First Circuit.

Feb. 9, 2010.

Peter G. Berman, Esq., on brief for Appellants.

John Boyajian, Esq., on brief for Appellee.

Before HILLMAN, DEASY, and ROSENTHAL, United States Bankruptcy Appellate Panel Judges.

DEASY, Bankruptcy Appellate Panel Judge.

Jonathan M. Pellegrino and Carolyn Pellegrino (the "Debtors") appeal from the bankruptcy court order dismissing their chapter 13 case (the "Dismissal Order") on the grounds that they do not satisfy the eligibility requirements of § 109(e).[1] We **AFFIRM.**

### BACKGROUND

On April 21, 2009, the Debtors filed their chapter 13 petition. Thereafter, they filed their plan (the "Plan") which included their Motion to Modify Secured Claim of Chase Manhattan Mortgage (the "Motion to Modify Secured Claim"). They are below median debtors. Their combined average monthly income is $4,511.00, and their average monthly expenses total $5,835.00. Chase Manhattan Mortgage ("Chase Manhattan") holds two secured claims on the Debtors' residence: a first mortgage in the amount of $287,033.00,

---

1. References to sections in the Bankruptcy Code are to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8, 119 Stat. 23, 11 U.S.C. §§ 101, *et seq.*

and a second mortgage in the amount of $54,695.00. In the Plan, the Debtors proposed to make a one-time payment of $8,000.00 to be funded by an unsecured loan from a friend. In addition to the fee of the chapter 13 trustee (the "Trustee"), the Debtors proposed to pay $2,500.00 in attorney's fees and $4,700.00 toward unsecured claims totaling $135,725.41, thus providing a 3.46% payment to unsecured creditors. They also proposed to make payments on the first mortgage directly to Chase Manhattan, and to avoid the second mortgage.[2]

The Trustee filed an Objection to Confirmation and an Amended Objection to Confirmation in which he asserted, among other things, that the Debtors "are not eligible to be debtors in a Chapter 13 proceeding." Additionally, the Trustee filed a Motion to Dismiss in which he sought to dismiss the Debtors' petition "on the grounds that they are not eligible to be debtors in a Chapter 13 proceeding." The Trustee argued that because the Debtors' schedules reflect a deficit of $1,324.00 per month,[3] they do not satisfy the requirement that "[o]nly an individual with regular income ... may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e). The Trustee explained that the Bankruptcy Code defines an "individual with regular income" as an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title." 11 U.S.C. § 101(30).

Chase Home Finance, LLC ("Chase"), the servicer for the holder of the second

mortgage on the Property, filed an Objection to Debtors' Chapter 13 Plan and Motion to Modify Secured Claim, in which it asserted, among other things, that pursuant to § 1325(b)(4)(B), "the court may not approve a plan with a term of less than three years over the objection of the Chapter 13 trustee or the holder of an allowed unsecured claim unless the plan provides for full payment of all allowed unsecured claims." Chase noted that the Plan had a one-month term, provided for the avoidance of the second mortgage, and failed to provide a 100% distribution of all unsecured claims. Chase also noted that the Trustee had already objected to the Plan.

The Debtors filed an Objection to Trustee's Motion to Dismiss and a Memorandum of Law in Support of Objection to Trustee's Motion to Dismiss, in which they characterized the Trustee's argument as "the legal theory that contributions by a non-debtor relative may not be included as part of the income available to fund a Chapter 13 Plan." The Debtors asserted that "[n]o court evaluating a plan submitted by a debtor with negative projected disposable income, but with a source of funding, has ever held that such a debtor is ineligible to obtain relief under Chapter 13." They urged the court to confirm the Plan on the grounds that they had adequate income to fund it.

On July 30, 2009, the bankruptcy court held a hearing on the Trustee's Motion to Dismiss. During the hearing, there was much back and forth between the parties regarding the "regular income" requirement, and whether the loan from the

---

**2.** In the Motion to Modify Secured Claim, the Debtors sought to avoid the second mortgage upon confirmation of the Plan. The Debtors represented that their Cranston, Rhode Island property (the "Property") has a fair market value of $275,000.00 based upon an attached Broker's Price Opinion.

**3.** As the Trustee stated in his Memorandum of Law in Support of Motion to Dismiss, if the bankruptcy court allowed the Debtors to strip off the second mortgage, the $310.00 monthly payment on the second mortgage would be eliminated, thus reducing the Debtor's monthly deficit to $1,014.00.

Debtors' friend should be included in the calculation of their income. The Trustee clarified that he had "never said" that "outside funding can't be used to supplement the paycheck"; instead, he had argued that debtors with a negative monthly income cannot satisfy the "regular income" requirement by making a one-time payment to creditors. The Trustee posited that a debtor with negative monthly income could satisfy the "regular income" requirement only if a family member were to pledge to make up the shortfall for the life of the plan, and concluded that: "[t]he language of the statute says there's supposed to be a plan, there are supposed to be payments under a plan, and this one-shot deal doesn't do it." The Debtors conceded that they would have a monthly shortfall, even with their friend's contribution, but asserted that their proposed lump sum payment to creditors means that they alone bear the risk that their income may not improve.

The bankruptcy court took the matter under submission, and subsequently issued the Dismissal Order. In dismissing the Debtors' case, the court concluded that the Debtors do not have excess income from which to make plan payments and are therefore not eligible for chapter 13 relief. This appeal followed.

### JURISDICTION

A bankruptcy appellate panel may hear appeals from "final judgments, orders and decrees [pursuant to 28 U.S.C. § 158(a)(1) ] or with leave of the court, from interlocutory orders and decrees [pursuant to 28 U.S.C. § 158(a)(3) ]." *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R.

643, 645 (1st Cir. BAP 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id.* at 646 (citations omitted). An order dismissing a chapter 13 case is a final, appealable order. *See Howard v. Lexington Invs., Inc. (In re Howard)*, 284 F.3d 320 (1st Cir.2002).

### STANDARD OF REVIEW

The Panel generally reviews findings of fact for clear error and conclusions of law *de novo*. *See TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719 n. 8 (1st Cir.1994). We review questions of statutory construction *de novo*. *Flynn v. Bankowski (In re Flynn)*, 402 B.R. 437, 442–43 (1st Cir. BAP 2009).

### DISCUSSION

The Bankruptcy Code provides that "[o]nly an individual with regular income ... may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e). An "individual with regular income" is an "individual whose income is sufficiently stable and regular to enable such individual to make *payments under a plan* under chapter 13 of this title." 11 U.S.C. § 101(30) (emphasis added). Section 101(30) thus contemplates that chapter 13 debtors will have disposable income from which to make plan payments. *In re Ellis*, 388 B.R. 456, 460 (Bankr.D.Mass.2008); *see also Tenney v. Terry (In re Terry)*, 630 F.2d 634, 635 (8th Cir.1980); [4] *Lindholm v. Rodgers (In re Lindholm)*, No. 04–90452, 2005 WL 2218990, at *1 (W.D.Mich. Sept. 13, 2005); *In re Jones*, 174 B.R. 8, 13

---

4. Pre–BAPCPA cases apply as BAPCPA made no changes to §§ 109(e) or 101(30). Section 101(30) was originally numbered § 101(24) under Bankruptcy Reform Act of 1978, and renumbered again in 1984 and 1990. None of the amendments affected the text of the subsection.

(Bankr.D.N.H.1994);[5] 2 Lawrence P. King, *Collier on Bankruptcy,* ¶ 101.30[2] (15th ed. rev.2009).

■ The Bankruptcy Code neither defines income for eligibility purposes nor establishes when the eligibility determination should be made. *In re Baird,* 228 B.R. 324, 327 (Bankr.M.D.Fla.1999) (explaining that the Bankruptcy Code does not define the word income, but it is to be interpreted broadly). Although the time for determination of the eligibility of a debtor for chapter 13 relief would seem to be the petition date, courts are split on this issue. *See In re Lilley,* 29 B.R. 442, 443–44 (1st Cir BAP 1983) (concluding that chapter 7 debtor seeking to convert to chapter 13 must have regular income at time of conversion); *In re Goodrich,* 257 B.R. 101, 103–104 (Bankr.M.D.Fla.2000) (making determination at time of confirmation); *In re Cole,* 3 B.R. 346 (Bankr. S.D.W.Va.1980) (same); *In re Moore,* 17 B.R. 551 (Bankr.M.D.Fla.1982) (holding that time for determination should be time most favorable for debtor). In this case, the Panel need not decide whether the determination of the Debtors' income of eligibility for chapter 13 under § 109(e) should be made on the petition date, at the time of confirmation, or another time because the Debtors contend that their income will not change between the petition date and the commencement/completion of their proposed single-payment plan. Although they expressed a hope that their income would increase in the future, the Debtors cannot satisfy the income requirement "by mere allegations that there is an income potential which is contingent upon developments that appear unlikely." *In re Jones,* 174 B.R. at 13 (citing 5 *Collier on Bankruptcy,* 1300.40[1], at 1300–83).

■ With respect to the $8,000.00 loan, the Debtors rightly assert that courts may, in some instances, include contributions from a third party when assessing the sufficiency of the debtor's income for purposes of §§ 109(e) and 101(30).[6] Typically, courts include contributions where the contributor commits to contributing monthly for the life of the plan, and has demonstrated a willingness and ability to do so. *See, e.g., Singer Asset Fin. Co., LLC v. Mullins (In re Mullins),* 360 B.R. 493, 500–501 (Bankr.W.D.Va.2007); *In re Murphy,* 226 B.R. 601, 604 (Bankr. M.D.Tenn.1998). Although courts have typically recognized contributions that come from family members, the test for regular income "is not the type or source of income, but rather its regularity and stability." *In re Baird,* 228 B.R. at 327–28; *see also In re Murphy,* 226 B.R. at 604. In this case, the Panel need not decide whether the loan proposed in the Debtors' plan is income for purposes of § 109(e), because, even treating the proposed loan proceeds as income, their income is insufficient to provide payments to creditors under a plan over the applicable commitment period.[7]

■ The Bankruptcy Code provisions determining eligibility for chapter 13 were not amended by the provisions of BAPCPA. However, BAPCPA did amend the

---

**5.** In *Jones,* the bankruptcy court dismissed the debtor's chapter 13 petition for lack of good faith but also found that he was not eligible for chapter 13 relief because he had a negative monthly income and therefore did not satisfy the requirements of § 101(30). *In re Jones,* 174 B.R. at 13.

**6.** Neither the Trustee nor the bankruptcy court disputed this general principle.

**7.** The Debtors' income over the minimum commitment period (36 × -$1,324.00 = -$47,664) added to the proposed loan proceeds ($8,000.00) results in projected disposable income of -$39,664.00.

confirmation requirements for chapter 13 plans which may indirectly affect the determination of eligibility for chapter 13. After BAPCPA, a chapter 13 plan may not be confirmed over the objection of the trustee or a creditor unless it proposes to pay all creditors in full or provides for all of the debtor's projected disposable income to be received during the applicable commitment period to be applied to make payments to unsecured creditors under the plan. 11 U.S.C. § 1325(b)(1). In this case, the Debtors have below median disposable income and do not propose to pay creditors in full. Therefore, the applicable commitment period is thirty-six months. 11 U.S.C. § 1325(b)(4)(A)(i). As the Debtors do not have sufficient income over the minimum commitment period to "make payments under a plan," even if the loan proceeds are income, the bankruptcy court properly found that they were not eligible for chapter 13 relief under § 109(e).

 Lastly, the Debtors are wrong in asserting that the bankruptcy court erred by ruling on their eligibility without affording them a confirmation hearing. The ability to make payments is a threshold requirement to proceed under chapter 13, wholly separate from the question of good faith.[8] *In re Ellis*, 388 B.R. at 460; *In re Lindholm*, 2005 WL 2218990 at *2. These below median income Debtors could have filed their case under chapter 7. Instead they chose to file under chapter 13 and propose a single-payment chapter 13 plan in an apparent attempt to avoid an out-of-the-money second mortgage, something they could not do in a chapter 7 proceeding. *Dewsnup v. Timm*, 502 U.S. 410, 417, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (holding that under secured mortgage may not be stripped down in chapter

7 proceeding); *Domestic Bank v. Mann (In re Mann)*, 249 B.R. 831, 840 (1st Cir. BAP 2000) (holding that residential property liens that are wholly unsecured may be voided in chapter 13). The Debtors would not have been allowed to disguise their case in order to gain the benefits of chapter 13. *See In re Ellis*, 388 B.R. at 460 (citing 1 Keith M. Lundin, *Chapter 13 Bankruptcy 3d Edition*, § 3.2 at 3–3 (2000 & Supp.2007)).

### *CONCLUSION*

For the reasons discussed above, we **AFFIRM** the Dismissal Order.

---

**8.** Section 1325(a) sets forth that the bankruptcy court must confirm a chapter 13 plan if certain requirements are met, including that "the plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3).