**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>ALICIA MARIE RICHARDS,<br>　　　　　　Debtor. | BAP No. CC-21-1178-LTF<br><br>Bk. No. 8:21-bk-10635-ES |
| ALICIA MARIE RICHARDS,<br>　　　　　Appellant,<br>v.<br>RICHARD A. MARSHACK, Chapter 7<br>Trustee; RYAL W. RICHARDS; KEVIN E.<br>ROBINSON,<br>　　　　　　Appellees. | **MEMORANDUM***

Appeal from the United States Bankruptcy Court
for the Central District of California
Erithe A. Smith, Bankruptcy Judge, Presiding

Before: LAFFERTY, TAYLOR, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Alicia Richards appeals the bankruptcy court's denial of her motion

to convert her chapter 7[1] case to one under chapter 13. Ms. Richards filed

---

　　　* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

　　　[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.

1

the motion shortly after the chapter 7 trustee began marketing Ms. Richards' residence. The bankruptcy court denied the motion on grounds of bad faith and because Ms. Richards lacked sufficient regular income to fund a chapter 13 plan. We AFFIRM.

## FACTS[2]

Ms. Richards filed a chapter 7 bankruptcy petition in March 2021. Appellee Richard A. Marshack was appointed chapter 7 trustee ("Trustee"). This was Ms. Richards' second bankruptcy filing. She had previously filed a chapter 13 case in May 2019 but was unable to propose a confirmable plan, and the bankruptcy court dismissed it in October 2019.

On her initial schedules, Ms. Richards listed her residence located in Newport Beach, California (the "Property"). In the space provided for the value of the Property, she wrote, "tbd." She included on Schedule B amounts she was owed for family support totaling $288,000, claims against third parties of $1 million, and contingent and unliquidated claims of $1 million. On Schedule D, Ms. Richards listed several claims purportedly secured by the Property, including a claim for $375,000 payable to herself, as well as several disputed judgment liens. On Schedule E, she listed a priority unsecured claim held by the Remsen Family Trust (the "Family Trust") for $300,000 that purported to be a domestic support obligation.

---

[2] Where necessary, we have exercised our discretion to take judicial notice of the dockets and imaged papers filed in debtor's current and previous bankruptcy case. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

Ms. Richards' Schedules I and J showed that she had income of $1,600 per month and expenses of $5,301. But on her Statement of Financial Affairs ("SFA"), Ms. Richards indicated she had no year-to-date income. Ms. Richards disclosed on her SFA a transfer of $250,000 to the Family Trust.

After her initial § 341 meeting,[3] on May 13, 2021, Ms. Richards filed amended schedules. On Schedule A, she changed the value of the Property from "tbd" to $3 million. On Schedule B, she changed the value of "claims against third parties" and "contingent and unliquidated claims" to $28,637,734. She attached a lengthy exhibit listing numerous lawsuits and claims against various parties, including her ex-husband, Ryal Richards, and his counsel, Kevin Robinson. Despite her valuation of "claims against third parties" at over $28 million, the claims listed on the attached exhibit totaled $1.6 million.

Amended Schedule D deleted the debt purportedly owed to Ms. Richards as well as the disputed judgment liens, leaving only two consensual liens of $180,000 and $15,000, respectively, secured by the Property. She also deleted from Schedule E the debt to the Family Trust. On her amended SFA, Ms. Richards changed her year-to-date earnings from $0 to $8,000. She also reduced the amount of the transfer to the Family Trust from $250,000 to $235,280.

---

[3] Trustee has continued the § 341 meeting at least eight times.

3

On June 17, 2021, Ms. Richards again filed amended schedules. Amended Schedule D added the secured claim of the Family Trust and the disputed judgment liens. Total monthly income under Schedule I changed to $5,000, comprised of $2,000 from employment and $3,000 from family contributions to pay the mortgage payment on the Property. Schedule J expenses totaled $4,878, resulting in a net monthly income of $122. Schedule F showed unsecured nonpriority claims of $104,709.56.

About two months into the case, Trustee filed a notice of assets and an application to employ a real estate agent to sell the Property. While that application was pending, Ms. Richards moved to convert the case to chapter 13. In her supporting declaration, she stated that she sought conversion to enable her to sell the Property herself. She stated that her salary had increased from $1,600 to $2,000 per month and that she would be receiving an additional $3,000 per month from her family to pay the mortgage payments. She proposed to make "a modest, yet meaningful" monthly plan payment while the Property was listed and stated that she had contacted several investment companies that had expressed interest in purchasing the Property for $2 million. She attached a proposed chapter 13 plan calling for monthly plan payments of $122 for six months, with a 100% payout to unsecured creditors (except for certain disputed claims) from the sale of the Property.

Trustee opposed the motion to convert on the grounds that Ms. Richards was not eligible to be a debtor under chapter 13 and because

4

conversion was not sought in good faith. Specifically, Trustee contended that Ms. Richards did not have "regular income" as required under § 109(e) because her expenses exceeded her income, and her lack of good faith was demonstrated by her inconsistent statements regarding her employment and income. Trustee noted that one of the reasons her prior chapter 13 case had been dismissed was her lack of sufficient income with which to fund a plan.

Trustee filed a supplemental opposition after questioning Ms. Richards at her continued § 341 meeting. At that meeting, she testified that, on February 4, 2020, she had given a deed of trust in the amount of $235,280.88 for the benefit of the Family Trust, of which her son Jonathan serves as trustee and of which she is a beneficiary. The deed of trust, which was never recorded, purported to secure a promissory note given by Ms. Richards in December 2017. Trustee argued that because the deed of trust was avoidable, he could preserve its value for the estate in the chapter 7 case but, if the case were converted, Ms. Richards likely would not take steps to avoid the deed of trust.

Trustee's counsel's supporting declaration stated that Ms. Richards had not timely provided certain financial records and information about the Family Trust. He recounted Ms. Richards' § 341 meeting testimony, in which she testified that, in addition to having gross earnings of $2,000 per month, her son Jonathan was contributing $3,000 per month by paying the mortgage payments on the Property. She also testified that her son was

5

planning to vacate the Property, and she was uncertain whether he would continue to be able to pay the mortgages. She further testified that Schedule B assets had increased from $5,215,431 scheduled in her first bankruptcy to $31,859,308 due to claims she asserted against various individuals, including Trustee, a superior court judge, her ex-husband and his counsel, her mother-in-law, and her neighbors. When questioned about the basis for her $2 million claim against her neighbors, she refused to elaborate.

Ms. Richards filed a reply in which she stated, among other things, that she would be foreclosing on a support judgment of $372,000, which would bring more funds into her chapter 13 case. She also argued that she had regular income from her employment as a legal assistant and that her motion to convert was filed in good faith. She accused Trustee of "a bunch of games and litigation tactics." In a later filed reply responding to the supplemental opposition, Ms. Richards disputed the facts regarding her failure to disclose the deed of trust and her lack of attempts to avoid it.

Ms. Richards' ex-husband and his counsel also opposed the conversion motion. They argued that, based on her income and the claims asserted against the estate, she could not propose a viable plan. Ms. Richards filed a reply declaration in which she blamed Mr. Richards for forcing her into bankruptcy and accused Trustee of having a secret meeting with and "taking the side of" Mr. Richards' counsel, attempting to discredit Ms. Richards with false facts, and "playing a bunch of games." She further alleged that Trustee had in the past sold properties to

"flipping" companies. She also complained that Trustee had not been able to obtain any bids for the purchase of the Property. In another reply declaration, she attached documentation relating to the support judgment.

Ms. Richards thereafter filed a Declaration of Contribution to Chapter 13 Plan, purportedly executed by her father, Lawrence Remsen. The declaration stated that he would be contributing $3,000 per month toward his daughter's plan to pay the mortgage payments. Trustee filed an objection and motion to strike the declaration on grounds that it was filed too late and did not attach documentary evidence of the source of the contribution. Trustee also noted that Mr. Remsen had been serving a life sentence in prison since 1983 and questioned how Mr. Remsen could plausibly contribute to the plan. Ms. Richards filed a reply in which she promised to provide copies of bank statements.

Ms. Richards filed two more declarations. The first was from her employer, John H. Mitchell, who is also Ms. Richards' stepfather. He testified that Ms. Richards was a "1099 employee" and that he had decided to increase her salary from $2,000 to $5,000 per month to assist in her effort to convert. The second was Mr. Remsen's declaration, to which was attached a copy of a cashier's check for $18,000 dated July 15, 2021, made payable to Mr. Remsen, along with his testimony that he had instructed Ms. Richards to deposit the funds into a separate account and set up automatic payments for the first and second mortgages on the Property.

After a hearing, the bankruptcy court took the matter under submission. The court entered its order denying the motion to convert on July 30, 2021, and Ms. Richards timely appealed. She sought a stay pending appeal, which the bankruptcy court denied. She did not ask this Panel for a stay.

During the pendency of this appeal, the bankruptcy court approved a sale of the Property for $2.2 million. It also entered an order requiring Ms. Richards to turn over possession of the Property no later than December 4, 2021. On February 22, 2022, the bankruptcy court entered an order finding Ms. Richards in contempt for her failure to turn over the Property and ordering her to vacate the Property promptly. Ms. Richards has appealed all those orders but did not obtain a stay pending appeal. The sale of the Property closed after this appeal was submitted.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court abuse its discretion in denying the motion to convert?

## STANDARDS OF REVIEW

We review for abuse of discretion an order denying a motion to convert. *Levesque v. Shapiro (In re Levesque)*, 473 B.R. 331, 335 (9th Cir. BAP 2012). A bankruptcy court abuses its discretion if it applies the wrong legal

8

standard, or misapplies the correct legal standard, or if it makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

A bankruptcy court's factual finding of bad faith is reviewed for clear error. *Ellsworth v. Lifescape Medical Assocs., P.C. (In re Ellsworth)*, 455 B.R. 904, 914 (9th Cir. BAP 2011). Under the clearly erroneous standard of review, if the bankruptcy court's findings are plausible in light of the record viewed in its entirety, we may not reverse even if we would have weighed the evidence differently. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) (citations omitted).

We may affirm on any basis supported by the record. *Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC)*, 481 B.R. 34, 44 (9th Cir. BAP 2012).

## DISCUSSION

### A.     Legal standard for conversion from chapter 7 to chapter 13

A debtor may convert her chapter 7 case to one "under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title." § 706(a). Despite the "at any time" language of this provision, the right to convert is not absolute. Rather, it is qualified by § 706(d), which provides, "[n]otwithstanding any other

9

provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." *See Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 372 (2007).

In *Marrama*, the Supreme Court held that a debtor seeking conversion to chapter 13 does not qualify under that chapter if he or she has engaged in bad faith or fraudulent conduct or is otherwise ineligible for chapter 13 relief. 549 U.S. at 372-74. In that case, the debtor had misrepresented facts about his principal asset, a home in Maine. Upon learning that the chapter 7 trustee intended to recover the home for the estate, the debtor moved to convert the case to chapter 13, arguing that he had an absolute right to convert. The Supreme Court disagreed, holding that the debtor did not qualify for chapter 13 because he had engaged in bad faith conduct. *See id.* The Court reasoned that, because bad faith is routinely held to constitute "cause" for dismissal of a chapter 13 case under § 1307(c), it was an appropriate ground for denial of a motion to convert from chapter 7 to chapter 13. The Court found that the bankruptcy courts' authority "to take any action that is necessary or appropriate 'to prevent an abuse of process' described in § 105(a) of the Code" justified "immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors." *Id.* at 375.

Although the Court's holding was not limited to the facts before it, it declined to decide exactly what conduct would suffice in future cases, other than that the debtor's conduct must be "atypical":

> We have no occasion here to articulate with precision what conduct qualifies as "bad faith" sufficient to permit a bankruptcy judge to dismiss a Chapter 13 case or to deny conversion from Chapter 7. It suffices to emphasize that the debtor's conduct must, in fact, be atypical. Limiting dismissal or denial of conversion to extraordinary cases is particularly appropriate in light of the fact that lack of good faith in proposing a Chapter 13 plan is an express statutory ground for denying plan confirmation.

*Id.* at 375 n.11 (citations omitted).

Ms. Richards argues that *Marrama* was overruled by *Law v. Siegel*, 571 U.S. 415 (2014). She cites *Nichols v. Marana Stockyard & Livestock Market, Inc. (In re Nichols)*, 10 F.4th 956 (9th Cir. 2021), which was decided during the pendency of this appeal.

In *Law*, the Supreme Court held that bankruptcy courts may not use their equitable powers under § 105(a) to contravene express provisions of the Bankruptcy Code. 571 U.S. at 422-23. In *Nichols*, the Ninth Circuit held that *Law* effectively overruled *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764 (9th Cir. 2008). In *Rosson*, the issue was whether the debtor had an absolute right to dismiss his chapter 13 case under § 1307(b), which provides, "[o]n request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court **shall**

dismiss a case under this chapter. . . ." (Emphasis added.) The Ninth Circuit expanded the reasoning of *Marrama* to the chapter 13 dismissal context, holding that "the debtor's right of voluntary dismissal under § 1307(b) is not absolute, but is qualified by the authority of a bankruptcy court to deny dismissal on grounds of bad-faith conduct or to prevent an abuse of process." *In re Rosson*, 545 F.3d at 773-74 (cleaned up).

In *Nichols*, the bankruptcy court, relying on *Rosson*, denied a chapter 13 debtor's motion to dismiss and granted the creditors' motion to convert to chapter 7 on grounds that the debtor was abusing the bankruptcy process. The Ninth Circuit reversed, holding that *Rosson* had been "effectively overruled" by *Law. In re Nichols*, 10 F.4th at 961.

But *Law* did not overrule *Marrama*, and *Nichols* did not so hold. *Marrama* involved a different statute with different language. As noted above, the right to convert under § 706(a) is qualified by § 706(d), which requires that a debtor seeking conversion must qualify to be a debtor in the converted case. The Supreme Court in *Marrama* held that when a debtor has engaged in bad faith conduct, he or she is disqualified from being a debtor under chapter 13, which has an explicit statutory good faith requirement. *See* § 1307(c) (authorizing dismissal of a chapter 13 case "for cause," including bad faith) and § 1325(a)(7) (requiring, as a condition to confirmation of a chapter 13 plan, that "the action of the debtor in filing the

12

petition was in good faith.")[4] Put another way, *Marrama*'s holding that the right to convert is not absolute was not premised upon the bankruptcy court's equitable power but on explicit provisions of the Bankruptcy Code. Thus, it does not run afoul of *Law*. This is so despite the Supreme Court's reference to § 105(a) as authorizing immediate denial of a motion to convert under § 706 instead of granting conversion and then entertaining a motion to reconvert or dismiss. *Marrama*, 549 U.S. at 375. The right to convert is expressly conditioned upon § 706(d)'s requirement that the debtor qualify to be a debtor in the converted case, and nothing in the Code requires the bankruptcy court to grant a motion to convert if that requirement is not met. Accordingly, denying conversion on that ground does not contravene any express provision of the Bankruptcy Code.

## B. The bankruptcy court's finding of bad faith was not clearly erroneous.

As discussed above, *Marrama*'s holding is not limited to situations where a debtor fails to disclose or misrepresents the value of assets but stands for the proposition that "atypical" conduct may support a bad faith finding sufficient to justify denial of conversion. Under *Marrama*, the determination of whether to grant a § 706 conversion motion implicitly incorporates the standards for dismissal or conversion set forth in § 1307(c). 549 U.S. at 372-74. In this circuit, bad faith is a ground for dismissal or conversion under § 1307(c) and requires an inquiry into the totality of the

---

[4] This is in contrast to chapter 11, which requires only that the plan be proposed

13

circumstances, focusing on: (1) whether the debtor misrepresented facts in her petition or plan, unfairly manipulated the Bankruptcy Code, or otherwise filed her petition or plan in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor only intended to defeat state court litigation; and (4) the presence of egregious behavior. *In re Ellsworth*, 455 B.R. at 917-18 (citing *Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999)).

The bankruptcy court considered the totality of the circumstances and found that Ms. Richards did not seek conversion in good faith and that granting her motion would constitute an abuse of the bankruptcy process. The bankruptcy court listed the following relevant circumstances supporting that finding:

1. Trustee had begun marketing the Property, which was Ms. Richards' primary reason for seeking conversion. Ms. Richards did not provide persuasive evidence for her argument that Trustee would not fulfill his duty to obtain appropriate value for the estate, despite her assertion that the Trustee had a pattern of using "flippers" to sell real estate.

2. Ms. Richards' proposed chapter 13 plan did not include any alternative should the Property not sell in six months, other than renting the Property—which would require Mr. Richards' consent—or reconverting the case.

---

in good faith. *See* § 1129(a)(3).

3. Ms. Richards lacked sufficient income to fund a chapter 13 plan, even if her monthly salary were increased to $5,000. The court noted that the familial relationship between Ms. Richards and her employer was not initially disclosed by her, but by Mr. Richards. It also noted that Mr. Mitchell's declaration testimony suggested that the $5,000 monthly salary was unrelated to the actual value of services rendered and was in the nature of gratuitous payments by a family member. For purposes of the motion, however, the court assumed the $5,000 was regular income.

4. Although doubts existed about the authenticity of the declarations submitted by Mr. Remsen, [5] even if those declarations were authentic and the funds existed, $18,000 would be insufficient to pay creditors in full.

5. On February 4, 2020, Ms. Richards executed a deed of trust against the Property as security for a debt of $235,280.88 purportedly owed to the Family Trust.[6] In her prior case,

[5] Trustee questioned the authenticity of Lawrence Remsen's declarations because Mr. Remsen was incarcerated. Ms. Richards responded that she had power of attorney to act on Mr. Remsen's behalf. But the signatures on the declarations purport to be those of Mr. Remsen; there is no indication that they were signed by Ms. Richards as attorney-in-fact for Mr. Remsen.

[6] The parties agree that the bankruptcy court erroneously found that the deed of trust was executed without court authorization during Ms. Richards' prior case. It was executed after her first case was dismissed and before she filed the instant chapter 7. Ms. Richards contends that this was "a structural error requiring immediate reversal."

15

Ms. Richards had listed the Family Trust as having a secured claim of $148,238.93. In the instant case, Ms. Richards listed the Family Trust as having an unsecured priority debt for domestic support payment reimbursement of $300,000, although she later amended Schedule D to include the Family Trust secured debt of $235,280.88. The bankruptcy court concluded that "the dramatic inconsistencies surrounding the amount and characterization of the Family Trust in the Prior Case and the current case are concerning and militate in favor of a finding of bad faith."

The bankruptcy court's bad faith finding was not illogical, implausible, or without support in the record. Even making allowances for Ms. Richards' pro se status, her constantly shifting statements and failures to provide competent evidence regarding her assets, liabilities, and income support the bankruptcy court's finding of bad faith. Although no single act or omission cited by the court necessarily provided an independent ground for a bad faith finding, the totality of Ms. Richards' conduct supports the bankruptcy court's conclusion that she was abusing the bankruptcy process.

Ms. Richards argues that the bankruptcy court's finding of bad faith is not supported by the evidence. She points out that that she did not

As discussed herein, that was only one of the acts cited by the bankruptcy court in support of its bad faith finding. The finding still stands without it.

inaccurately value the Property, nor did she hide the Property from creditors. But that is not the only basis for a bad faith finding, and she fails to address her inconsistent representations about the Family Trust and the purported debts owed to it. She also disputes the bankruptcy court's finding that her primary reason for seeking the conversion was because Trustee had begun marketing the Property. She asserts that she sought conversion to protect creditors by preventing Trustee from running up fees and selling the Property for less than fair market value. But there is no evidence in the record that this was a likely scenario.

Finally, Ms. Richards argues that creditors would not be prejudiced by conversion because if the case stays in chapter 7, it will be some time before any distributions are made "because of all the disputes." But even accepting this assertion as true, this is not a relevant reason to permit conversion when there is evidence of bad faith—particularly where Ms. Richards is the instigator of the disputes.

## C.    The bankruptcy court did not err in finding that Ms. Richards lacked sufficient regular income to fund a chapter 13 plan.

Although the bankruptcy court cited Ms. Richards' lack of sufficient regular income as a factor in determining bad faith, a lack of regular income independently disqualifies a debtor from being in a chapter 13 case. "Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $419,275 . . . and noncontingent, liquidated, secured debts of less than

17

$1,257,850 . . . may be a debtor under chapter 13 of this title." § 109(e). The term "individual with regular income" is defined as "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title . . . ." § 101(30).

It is undisputed that Ms. Richards lacked sufficient regular income to pay creditors absent a sale of the Property. According to her proposed chapter 13 plan, she had only $122 in disposable monthly income, while nonpriority unsecured claims totaled $104,709.56. Although family contributions may be considered in determining the feasibility of a plan, the court may require evidence of a "firm commitment by the family member to make the contributions and a long and undisputed history of providing for the debtor." *In re Deutsch*, 529 B.R. 308, 312 (Bankr. C.D. Cal. 2015) (citation omitted); *see also Pellegrino v. Boyajian (In re Pellegrino)*, 423 B.R. 586, 590 (1st Cir. BAP 2010) ("Typically, courts include contributions where the contributor commits to contributing monthly for the life of the plan, and has demonstrated a willingness and ability to do so." (citations omitted)).

Here, the evidence did not show a "firm commitment." Ms. Richards testified at her § 341 meeting that she was not sure whether her son would be able to continue making the mortgage payments on the Property; he did not file a declaration committing to those payments. Mr. Remsen indicated in his declaration that he was giving $18,000 to Ms. Richards to cover the mortgage payments for six months pending a sale of the Property in

18

chapter 13, but this one-time gift does not constitute "regular income" either. Moreover, as suggested by the bankruptcy court, Ms. Richards' salary increase should probably have been treated as a gratuitous family contribution rather than employment income. Mr. Mitchell's declaration testimony indicated that he did not keep track of her hours, and in his amended declaration he testified, "I have decided to increase Alicia's salary beginning August 1, 2021 to $5,000 per month in order to help her covert [sic] to Chapter 13." This testimony suggests that her stepfather gratuitously increased her salary to help her fund her plan, but there is no evidence of a firm commitment for the term of the plan or a history of providing for Ms. Richards.

Ms. Richards complains that the bankruptcy court failed to consider the sale of the Property, the support judgment, and pending litigation claims as sources of plan payments. But those assets do not constitute "regular income" under the Code. *Cf. McDonald v. Burgie (In re Burgie)*, 239 B.R. 406, 410-11 (9th Cir. BAP 1999) (only regular income and substitutes therefor may be counted in the determination of projected disposable income; only if an asset in question is an anticipated stream of payments is it included in the calculation). The bankruptcy court did not err in finding that Ms. Richards did not have sufficient regular income to fund a chapter 13 plan.

We note that, during the pendency of this appeal, Ms. Richards filed an opposition to Trustee's motion to sell the Property in which she asserted

19

that the Property was fully encumbered by secured debt. In that opposition, she listed claims secured by the Property totaling approximately $3 million. This amount includes the "Lawrence Remsen contract" for $1.75 million, a claim that she had never listed in her schedules. These claims render Ms. Richards ineligible to be a debtor under chapter 13 because they exceed the secured debt limit under § 109(e) ($1,257,850). At oral argument, Trustee's counsel pointed out that the proofs of claim filed in this case exceeded the debt limits. Although this information was not before the court when it ruled on the motion to convert, this circumstance impacts both bad faith and eligibility and lends further support to the bankruptcy court's ruling.

In Trustee's brief, he raises some issues that do not appear to have been raised in the bankruptcy court in the context of the motion to convert and were not addressed in the bankruptcy court's ruling.

First, he argues that Ms. Richards' proposed plan is essentially a liquidating plan, which is not an appropriate use of a chapter 13, citing *In re Gavia*, 24 B.R. 573, 575 (9th Cir. BAP 1982). In *Gavia*, the debtors proposed to park in a chapter 13 for six months without making any payments on either secured or unsecured debts pending the sale of real property. Ms. Richards argues that her case is distinguishable because she will be making payments pending the sale of her home.

Second, Trustee notes that, pre-petition, the family court entered an order that required sale or refinance of the Property by July 7, 2017, but

Ms. Richards failed to comply and instead pursued litigation to have that order set aside. He argues that this is evidence of bad faith pre-petition conduct. Ms. Richards contends that orders entered in the family court were void on various grounds, including denial of due process and equal protection.

Because these arguments were not considered by the bankruptcy court in connection with the motion to convert, we decline to consider them here.[7]

## CONCLUSION

For these reasons, the bankruptcy court did not abuse its discretion in denying the motion to convert. We AFFIRM.

---

[7] Trustee mentioned in his application to employ the real estate agent that Ms. Richards had failed to comply with the family court's order, but he did not raise it as a ground for denying conversion.