PROTECTIVE LIFE INSURANCE
COMPANY, Plaintiff,
Appellee,

v.

Dennis J. SULLIVAN, Defendant,

and

Dignity Viatical Settlement Partners,
L.P., and Dignity Partners, Inc.,
Defendants, Appellants.

No. 96–1080.

United States Court of Appeals,
First Circuit.

Argued June 5, 1996.

Decided July 15, 1996.

Luke DeGrand with whom Clark & De-Grand, Chicago, IL, Wayne S. Henderson, and Heidlage & Reece, P.C., Boston MA, were on briefs, for appellants.

Elliott M. Kroll, Mark S. Fragner, Lori M. Meyers and Kroll & Tract, New York City, on brief, for Cancer Care, Inc., The Viatical Association of America, Affording Care, and the National Association of People With Aids, Amici Curiae.

John A. Shope with whom John H. Henn and Foley, Hoag & Eliot, Boston, MA, were on briefs, for appellee.

Rita M. Theisen, Andrea J. Hageman, Le-Boeuf, Lamb, Greene & MacRae, L.L.P., Washington, DC, and Phillip E. Stano, Washington, DC, on brief, for American Council of Life Insurance, Amicus Curiae.

**2**

Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and BOUDIN, Circuit Judge.

PER CURIAM.

Dignity Viatical Settlement Partners, L.P. and Dignity Partners, Inc. (collectively, "Dignity") appeal from a judgment in favor of Protective Life Insurance Company in the insurance company's action for rescission of a life insurance policy. The district court held that the Massachusetts incontestability statute, Mass. Gen. L. ch. 175, § 132, does not bar an action for rescission of a life insurance policy for fraud, even though the action was commenced more than two years after the policy was issued. After careful deliberation, we certify, on our own motion, two questions concerning the contestability of life insurance policies under Massachusetts law to the Supreme Judicial Court of Massachusetts.

On September 24, 1991, Dennis J. Sullivan applied to Protective Life for a life insurance policy in the amount of $100,000 with an annual premium of $175. Although Sullivan had been diagnosed a month earlier as HIV positive and had begun a course of treatment, he falsely stated that his health was "excellent", omitted the names of those doctors who knew of his affliction, and said he was not taking medication (when in fact he was using AZT). He authorized Protective Life to conduct medical tests, including a test for HIV infection, but on November 8, 1991, the insurance company issued a policy to Sullivan without having ordered an HIV test. The policy included an optional provision which, for an increase in the annual premium, gave Sullivan the right to waive the premium in the event he became disabled.

In 1992, Sullivan's health worsened and by June 1992 his HIV infection had progressed to AIDS. He stopped working around this time and applied in October 1992 for disability benefits from another insurance company. But he did not apply to Protective Life for a waiver of his life insurance premiums on account of disability until about November 8, 1993, exactly two years after the policy was issued.

In October 1993, Sullivan contacted National Viator Representatives, Inc., a broker of viatical settlements, agreements under which an insured sells a life insurance policy for an immediate payment approximating the discounted face value of the policy. The broker informed Protective Life that Sullivan wished to assign ownership of his policy. Sullivan agreed to assign his policy to Dignity, a firm engaged in making viatical settlements. On December 14, 1993, Dignity submitted the assignment forms to Protective Life. Protective Life approved the assignment on December 22, 1993, and on the same day Dignity paid Sullivan $73,000.

Massachusetts law requires life insurance policies to include a provision stating that the policy shall not be contestable after it has been in effect for two years from its date of issue,

> except for non-payment of premiums or violation of the conditions of the policy relating to military or naval service in time of war and except, if the company so elects, for the purpose of contesting claims for total and permanent disability benefits or additional benefits specifically granted in case of death by accident.

Mass. Gen. L. ch. 175, § 132. Sullivan's insurance policy contained the following incontestability provision: "We cannot bring any legal action to contest the validity of this policy after it has been in force two years except for failure to pay premiums *unless fraud is involved.*" (emphasis added). Protective Life had submitted the policy form containing this provision to the Massachusetts Commissioner of Insurance, and the Commissioner had approved the form on September 18, 1988, saying that it "appear[ed] to conform" to Massachusetts insurance law.

Protective Life filed suit on April 15, 1994 to rescind the policy because Sullivan had obtained it through fraudulent misrepresentations. It is undisputed that Sullivan knew he was HIV positive when he applied for the life insurance policy, that he failed to disclose that he was seeing a physician for treatment of this condition despite questions calling for this information, and that Protective Life would not have issued the policy had it known Sullivan's true medical condition.

Dignity and Sullivan moved to dismiss the action on the ground that the provision allowing the company to contest the policy for fraud more than two years from its date of issue was inconsistent with Mass. Gen. L. ch. 175, § 132. The district court denied the motion on January 12, 1995 and similarly denied the subsequent motion for reconsideration on June 9, 1995. After a two-day bench trial, the court ruled from the bench that state law did not bar the action and entered judgment for Protective Life against Dignity on November 17, 1995. Sullivan died of complications associated with AIDS on April 4, 1995, and the claims against him were dismissed.

The district court found no clear precedent on the question whether section 132 permits a fraud exception to the two-year limitations period for contesting life insurance policies. The court held that the Commissioner's interpretation of the statute, implicit in the approval of the policy form, was entitled to deference. Finding the statute silent on the precise issue, the court held that the Commissioner's decision to approve a policy form containing a fraud exception was reasonable, and therefore that Protective Life could challenge the policy. The court found by clear and convincing evidence that Sullivan committed fraud and rescinded the policy.

On appeal, Dignity argues that section 132 should not be read to include a fraud exception. Dignity further contends that the Commissioner's approval of the policy form was not entitled to deference because it did not constitute a meaningful interpretation of the statute. Protective Life, in response, asserts that the Commissioner's interpretation of section 132 is reasonable and entitled to deference. Protective Life also argues as an alternative ground for affirmance that the incontestability period was equitably tolled because Sullivan concealed his misrepresentations through his delay in applying for a waiver of premiums for disability.

There is a plausible plain-language argument that section 132 should not be read to include a fraud exception. The statute expressly enumerates three exceptions to the two-year limitations period, and fraud is not among them. The statute governing health insurance policies, in contrast, states that the validity of a policy may be challenged for fraudulent misstatements in the application beyond the ordinary incontestability period. Mass. Gen. L. ch.175, § 108(3)(a)(2). Section 132 also states that a policy provision that "is stated in terms more favorable to the insured or his beneficiary than are herein set forth" is acceptable; Dignity argues that a negative inference should be drawn from this that a provision less favorable to the insured violates the statute—and that Protective Life's inclusion of the fraud exception in its contestability provision makes the policy less favorable.

The interpretation of section 132 is complicated, however, by its relationship to another provision of Massachusetts insurance law, Mass Gen. L. ch. 175, § 124. Section 124 provides that in claims arising under a life insurance policy issued without a medical examination or without knowledge and consent of the insured,

the statements made in the application as to the age, physical condition and family history of the insured shall be held to be valid and binding on the company; but the company shall not be debarred from proving as a defense to such claim that said statements were wilfully false, fraudulent or misleading.

On Dignity's reading, section 124 operates only during the two-year period for contesting the policy under section 132, and makes it more difficult to rescind certain types of policies (those issued without an examination or without knowledge and consent) during that time. Section 124 requires proof of fraud, while policies outside the scope of section 124 may be rescinded on a showing of material factual inaccuracy, see Mass. Gen. L. ch. 175, § 186. Protective Life argues to the contrary that section 124 contains no express time limitation and creates an exception to the ordinary two-year time limit for policies issued without examination or consent, allowing insurance companies to contest such policies for fraud at any time.

This case presents a question of first impression in Massachusetts. In *Bonitz v. Travelers Ins. Co.*, 374 Mass. 327, 372 N.E.2d 254 (1978), the court observed that section

**4**

132 "is designed to require the insurer to investigate and act with reasonable promptness if it wishes to deny liability on the ground of false representation or warranty by the insured." *Id.* 372 N.E.2d at 256 (quoting *Metropolitan Life Ins. Co. v. De Nicola,* 317 Mass. 416, 58 N.E.2d 841, 842 (1944)). But *Bonitz* did not concern the validity of an exception for fraud and so does not control here. Decisions in other jurisdictions on fraud exceptions to incontestability statutes have been mixed, *compare Amex Life Assurance Co. v. Slome Capital Corp.,* 43 Cal.App.4th 1588, 1605–07, 51 Cal.Rptr.2d 354 (1996), *with Fioretti v. Massachusetts General Life Ins. Co.,* 53 F.3d 1228, 1236–37 (11th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 708, 133 L.Ed.2d 663 (1996) (construing New Jersey law), and none has dealt with the interaction between two provisions analogous to sections 124 and 132.

Protective Life offers the canon of construction that the specific controls the general, but that rule does not help in this case because both statutory provisions are specific in different ways. Section 132 states clearly that there is a two-year time limit on contesting the validity of life insurance policies. Section 124 says, equally clearly, that particular types of policies—those issued without a medical examination or knowledge and consent of the insured—may be contested for fraud, without specifying a time limit. As a matter of policy, Protective Life claims that section 124 was enacted to encourage the issuance of life insurance policies cheaply and quickly, without a medical examination. Dignity asserts to the contrary that the provision *disfavors* such policies by making it more difficult for insurance companies to contest them during the two-year contestability period. Neither party has presented persuasive legislative history on the point.

■ The subsidiary question of the weight to be accorded to the Commissioner's action in clearing the policy form also appears to be open to dispute. The Commissioner's interpretation of Massachusetts insurance law may be entitled to deference even when the interpretation is evidenced only by approval of a policy form. *See Colby v. Metropolitan Property and Cas. Ins. Co.,* 420 Mass. 799,

652 N.E.2d 128, 131 (1995). The district court found that the Commissioner has determined that there is an implicit exception to the incontestability clause for actual, willful fraud and has routinely approved life insurance policies with such an exception. If, however, the Commissioner's interpretation is contrary to the language and policy of the statute, it will not be deemed persuasive. *Cardin v. Royal Ins. Co. of America,* 394 Mass. 450, 476 N.E.2d 200, 205 (1985).

Protective Life further argues that the two-year time limit should be equitably tolled because Sullivan not only committed fraud in his application, but also concealed the fraud by deliberately waiting to apply for the disability waiver of his premium until the incontestability period expired. This argument also raises a difficult question of Massachusetts law. There is no clear precedent on the question whether the time limit in section 132 is subject to equitable tolling.

Even if in some cases the time limit could be tolled, the facts in this case present a further question: the only act of concealment asserted as a ground for equitable tolling is Sullivan's delay in applying for his disability waiver. The district court found that this delay amounted to an ongoing course of fraudulent conduct designed to conceal the fraud in the application. Dignity denies that Sullivan deliberately delayed his application and denies that such inaction, even if deliberate, could give rise to equitable tolling.

On our own motion, we certify to the Supreme Judicial Court of Massachusetts, pursuant to its Rule 1:03, the questions set forth in the attached certificate, and we retain jurisdiction over this case pending their determination.

*It is so ordered.*

## CERTIFICATION

■ For the reasons discussed in our opinion in this case, we certify to the Supreme Judicial Court of Massachusetts, pursuant to its Rule 1:03, the following questions:

1. Does Mass. Gen. L. ch. 175, § 132, taken together with § 124, bar an insurance company from contesting the validity of a life insurance policy more than two years after its date of issue on the ground

that the insured made fraudulent misrepresentations in applying for the policy, where the policy provided that it was contestable for fraud at any time and where the Massachusetts Commissioner of Insurance approved the policy form?

2. If the incontestability statute bars such an action, is the contestability period nonetheless equitably tolled under the circumstances of this case by Sullivan's failure to apply for the disability waiver to which he was entitled until two years after the policy was issued?

Although we have framed the questions for the Supreme Judicial Court, we would welcome discussion by that court on any other issue of Massachusetts law material to the case. The Clerk of this court will transmit, under the official seal of this court, the certified questions and our opinion in this case, along with copies of the briefs and appendix filed by the parties in this case, to the Supreme Judicial Court of Massachusetts.