**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

_____

**BAP NO. PR 19-061**

_____

**Bankruptcy Case No. 16-04743-EAG**
**Bankruptcy Case No. 16-04745-EAG**
**(Consolidated)**

_____

**ROSA DAIRY FARM, INC.,**
**IVAN OSVALDO ROSA TOLEDO, and**
**ANA EVELYN SANTIAGO LEON,**
**Debtors.**

_____

**MILK INDUSTRY REGULATORY OFFICE OF THE**
**COMMONWEALTH OF PUERTO RICO, a/k/a ORIL,**
**Appellant,**

**v.**

**ROSA DAIRY FARM, INC.,**
**IVAN OSVALDO ROSA TOLEDO, ANA EVELYN SANTIAGO LEON,**
**and CONDADO 4, LLC,**
**Appellees.**

_____

**Appeal from the United States Bankruptcy Court**
**for the District of Puerto Rico**
**(Hon. Brian K. Tester, United States Bankruptcy Judge)**

_____

**Before Harwood, Cary, and Fagone,**
**United States Bankruptcy Appellate Panel Judges.**

_____

Edward W. Hill Tollinche, Esq., on brief for Appellant.
Homel A. Mercado-Justiniano, Esq., on brief for Appellees, Rosa Dairy Farm, Inc.,
Ivan Osvaldo Rosa Toledo and Ana Evelyn Santiago Leon.
Sonia E. Colón, Esq., Gustavo A. Chico-Barris, Esq., and Camille N. Somoza, Esq.,
on brief for Appellee, Condado 4, LLC.

_____

**December 4, 2020**

_____

**Cary, U.S. Bankruptcy Appellate Panel Judge.**

The chapter 12 debtors, who operate a dairy farm in Camuy, Puerto Rico, filed a motion seeking an order authorizing them to lease a portion of their milk quota to a third party. The Milk Industry Regulatory Office of the Commonwealth of Puerto Rico—referred to here by its Spanish language acronym, ORIL—objected to the motion on the grounds that the lease exceeded Puerto Rico statutory and regulatory limitations and that the debtors failed to obtain ORIL's authorization prior to seeking bankruptcy court approval. Ruling that "ORIL's regulatory discretion must not interfere with contrary federal policy and with ORIL's own [r]egulations," the bankruptcy court granted the motion. On appeal, ORIL argues that the bankruptcy court erred by permitting the debtors to lease milk quota in excess of statutory and regulatory limitations based on "federal supremacy" instead of giving deference to ORIL's interpretation of the relevant regulation.

For the reasons set forth below, we **AFFIRM** the order granting the motion, albeit on different grounds than those stated by the bankruptcy court.

## BACKGROUND

### I.     Regulation of Milk in Puerto Rico

The milk industry in Puerto Rico is regulated by ORIL which is a subdivision of the Puerto Rico Department of Agriculture. See P.R. Laws Ann. tit. 5, §§ 1092–1125a; Regulation Number 7 of the Office of the Milk Industry Regulatory Administration to Establish the Rules and Regulations Applicable to the Operation of the Registry of Production Quota Transactions of the Milk Industry, as amended on November 12, 2015 (known as "Regulation No. 8660"); see also United States v. Gonzalez-Alvarez, 277 F.3d 73, 75 (1st Cir. 2002). ORIL permits dairy farmers to produce milk according to assigned quotas, which are measured in quarts and in

2

two-week increments according to the needs of the market.  See P.R. Laws Ann. tit. 5, § 1126; see also Gonzalez-Alvarez, 277 F.3d at 75-76.  A dairy farmer's milk quota is an asset which can be sold, leased, or used as collateral for credit.  See P.R. Laws Ann. tit. 5, § 1135; Regulation No. 8660, § 7; see also In re Vaqueria Las Martas, Inc., 617 B.R. 429, 432 (Bankr. D.P.R. 2020).

## II.     The Bankruptcy Proceedings

### A.     The Bankruptcy Filings

Rosa Dairy Farm, Inc. ("RDF"), and Ivan Osvaldo Rosa Toledo and Ana Evelyn Santiago Leon (the "Rosas" and, collectively with RDF, the "Debtors"), operate a dairy farm under a license issued by ORIL.

In June 2016, both RDF and the Rosas filed petitions for relief under chapter 12 of the Bankruptcy Code, and their cases were consolidated.[1]  On its bankruptcy schedules, RDF indicated it owned 82,666 liters of biweekly milk quota, valued at approximately $1.2 million, and listed Condado 4, LLC ("Condado") as holding a $2.9 million claim, partially secured by a lien on its milk quota.[2]  The Rosas listed assets totaling approximately $1.4 million, primarily consisting of the property on which RDF operated (the "Farm"), which they valued at $1.1 million, and their residence, which they valued at $130,000.  They also listed Condado as holding a $2.9 million claim, partially secured by a mortgage on the Farm.

Condado filed three proofs of claim totaling approximately $2.9 million, which indicated that the claims were secured by mortgages on the Farm and the Rosas' residence, as well as a first priority lien on RDF's milk quota.

---

[1]  Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101-1532.

[2]  The record reflects that the parties refer to the volume measurements of milk in both quarts and liters at various times.  Those variations are not material to the resolution of this appeal.

**B.**     **The Amended Chapter 12 Plan**

In February 2019, the Debtors filed an Amended Chapter 12 Plan (the "Plan"), proposing to pay Condado a secured claim in the amount of $2,469,990 according to a payment schedule established by the parties in a court-approved stipulation, and a general unsecured claim in the amount of $498,916.01. The Plan also provided it would be funded "from the [Debtors'] dairy farm operation on the basis of consecutive installments remitted weekly and directly from [the milk processing plant]." It recognized the Debtors were leasing 37,500 liters of their milk quota to third parties and using the funds to make payments to Condado, and provided they would "continue to lease quota and use said funds to complete payments to secured creditor and/or to the Chapter 12 Trustee."

ORIL raised no objection to the Plan, and it was confirmed in May 2019.

**III.     Proceedings Relating to the Motion to Lease Milk Quota**

**A.     The Motion to Lease**

On October 3, 2019, the Debtors filed a motion ("Motion to Lease") seeking authority to lease 10,000 liters of their biweekly milk quota to a fellow dairy farmer duly licensed by ORIL for twelve months (the "Lease").[3] Consistent with the terms of the Plan, the Debtors indicated that payments under the Lease would be made by "direct debit" from the lessee's sales to the milk processing plants and would be sent directly to Condado. They further asserted that the income from the Lease would be used to fund the monthly payments due to Condado under the confirmed Plan and that the Lease was necessary in order to "comply with Plan terms."

---

[3] Between August 2018 and January 2019, the Debtors filed five separate motions seeking authority to lease a combined total of 37,500 liters of milk quota to various third parties (the "Prior Leases"). ORIL did not object to any of these motions, and the bankruptcy court granted each of them. The Motion to Lease was the Debtors' sixth attempt to lease their milk quota while in bankruptcy.

4

**B.    ORIL's Objection to Motion to Lease**

ORIL objected to the Motion to Lease, arguing it should be denied because the Debtors were already leasing milk quota well over the 5,000-quart limit prescribed by Puerto Rico statute and regulation.  Permitting the Debtors to lease an additional 10,000 quarts, ORIL maintained, would increase their milk quota leases to about 57.5% of their total quota (47,500 of their 82,666 liters).  As a result, according to ORIL, they would "generate more income via leases, than by production of milk," which is contrary to the very purpose of the milk production quota system.  ORIL also argued the Debtors failed to obtain ORIL's approval before entering into another lease that exceeded the 5,000-quart limit which approval, ORIL claimed, was a "condition precedent" to executing such a lease.

**C.    Responses to ORIL's Objection to Motion to Lease**

Condado responded to ORIL's objection, asserting that the Debtors' request to lease milk quota was made for the legitimate purpose of complying with the confirmed Plan and fell within the so-called "bankruptcy exception" to the 5,000-quart limitation on milk quota leases set forth in P.R. Laws Ann. tit. 5, § 1136, and Regulation No. 8660.  Condado maintained that the Debtors had complied with Regulation No. 8660's requirements by: (1) demonstrating they needed the income from the Lease in order to make the payments to Condado required by the Plan; and (2) seeking and obtaining bankruptcy court approval prior to submitting the proposed Lease to ORIL for authorization.

The Debtors also filed a response to ORIL's objection, in which they expounded on the reasons why they needed to lease additional milk quota.  They explained: (1) many of the 108 milking cows they had at the inception of their bankruptcy case had died or were nearing the end of their production life, so they were unable to produce enough milk to satisfy their quota;

5

(2) Hurricane Maria in September 2017 severely affected their operations and cow health; (3) despite their best efforts, the Debtors had not been able to increase milk production to the level necessary to comply with the Plan; (4) the confirmed Plan expressly provided that 37,500 liters of milk quota were, at the time of confirmation, being leased to third parties under the Prior Leases and contemplated that the Debtors would continue to lease their milk quota to generate income to make payments under the Plan; and (5) two of the Prior Leases, totaling 18,000 liters, were expiring in November 2019, so they needed a new lease to continue making payments to Condado under the Plan.

### D.     ORIL's Sur-Reply and Condado's Response

ORIL then filed a sur-reply asserting that Condado had misconstrued the regulatory language requiring lessors to obtain ORIL's authorization to lease in excess of 5,000 quarts of milk quota. It further argued that the Debtors' representations regarding the reasons for its reduced milk production were false and that their "current cash-crunch [wa]s a problem of [their] own making."

In response, Condado asserted that ORIL's position regarding the limitations and requirements of the bankruptcy exception set forth in Regulation No. 8660 conflicted with "current federal policy" and the express purpose of the regulation. According to Condado, the bankruptcy exception was created in 2015 "with the express purpose of 'adapt[ing] the provisions of the [previous] Regulation to the current conditions of the milk industry,'" which "necessarily include the increasing financial difficulties faced by farmers as recently acknowledged by Congress in the Family Farmers Relief Act of 2019 . . . ." The federal policy underlying that act, Condado maintained, is "to 'give[] more farmers an opportunity to qualify for chapter 12 bankruptcy [and] provide[] the restructuring and seasonal *repayment flexibility*

6

*that many farmers need* in today's lagging farm economy and [] help to align bankruptcy law with the scale and credit needs of U.S. agriculture." (emphasis in original). While ORIL has some "regulatory discretion," Condado argued, it "must not interfere with contrary federal policy and with its own Regulations."

### E. Order Authorizing Lease

On December 3, 2019, the bankruptcy court, without a hearing, entered an order granting the Motion to Lease (the "Order Authorizing Lease"), which provided:

> The court agrees with the position and analysis of Debtors and Condado 4 that ORIL's regulatory discretion must not interfere with contrary federal policy and with its own Regulations. Therefore, Debtors' motion to lease milk quota [Docket No. 237] is GRANTED.

This appeal followed. [4]

### POSITIONS OF THE PARTIES

## I. ORIL

ORIL argues that the bankruptcy court committed clear error by authorizing the Debtors to lease milk quota beyond statutory and regulatory limitations "based on federal supremacy." According to ORIL, the bankruptcy court incorrectly "assumed" that federal policy and bankruptcy law preempt Puerto Rico statutory and regulatory restrictions on property rights, specifically those related to leasing milk quota. This is not the case, ORIL claims, as bankruptcy law does not preempt state regulation of property unless the state law conflicts with federal law. Although § 363(b) authorizes debtors to lease property of the estate, such as milk quota, ORIL maintains that it does not relieve them from "valid state statutory and regulatory restrictions to

---

[4] After filing the Motion to Lease at issue in this appeal, the Debtors filed three more motions to lease a total of 35,000 liters of milk quota. The bankruptcy court granted two of them as unopposed. The third motion, to which ORIL objected, was granted "for the same reasons stated in [the Order Authorizing Lease]."

leasing its quota." Regulation No. 8660, ORIL asserts, typically requires lessors to seek and obtain ORIL's authorization to lease in excess of the 5,000-quart limitations as a "condition precedent" to seeking bankruptcy court authority to enter into such a lease. Section 363(b), ORIL claims, does not relieve the Debtors from first seeking ORIL's authorization to exceed the 5,000-quart cap nor does the bankruptcy court "become a super-administrator that can substitute its judgment for the judgment of an agency administrator."

ORIL also contends that the bankruptcy court committed "clear error" when it failed to give ORIL deference in determining how much quota the Debtors could lease. ORIL maintains, "as [a] specialized state agency with expertise in substantive matters related to the milk industry, and entrusted with the oversight thereof, and particularly so for transactions with milk production quota, ORIL [sh]ould be granted deference by a court, state or federal." Here, ORIL asserts, the bankruptcy court committed reversible error by completely ignoring ORIL's objection and failing to provide it with any degree of deference.

## II.     The Debtors and Condado

Condado and the Debtors (collectively, the "Appellees"), on the other hand, reassert their position below that in order for dairy farmers who are under the protection of the Bankruptcy Code to qualify for the bankruptcy exception to the 5,000-quart limit on milk quota leases, they must: (1) first obtain authority from the bankruptcy court to lease milk quota in excess of 5,000 quarts; and (2) then file with ORIL a written petition referencing the bankruptcy court order authorizing the lease and establishing that the lease is necessary for the farmer to comply with the reorganization plan. They maintain that to require dairy farmers to obtain ORIL's approval of the lease *before* seeking authority from the bankruptcy court would "put the cart before the horse."

8

The Appellees contend the Debtors fully complied with these requirements by filing a motion with the bankruptcy court seeking authority to lease milk quota to a licensed third party for a one-year period and demonstrating that the Lease was critical for their reorganization. They also challenge ORIL's argument that, because the Debtors had already leased a substantial amount of milk quota, they should be barred from leasing additional quarts. They highlight that the confirmed Plan contemplated that the Debtors were leasing 37,500 liters of milk quota to third parties and that the Debtors needed the income from the leases in order to make their payments under the Plan, yet ORIL did not object to confirmation of the Plan.

Lastly, the Appellees argue that although ORIL has some discretion in its own administrative proceedings, ORIL's regulatory discretion cannot interfere with contrary federal policy and with its own regulations. ORIL's legal position regarding the requirements of Regulation No. 8660, they claim, counters federal bankruptcy policy and seeks to frustrate the Debtors' legitimate efforts to reorganize.

**APPELLATE JURISDICTION**

We have jurisdiction to hear appeals from final orders of the bankruptcy court. 28 U.S.C. § 158(a)-(b); see also Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S. Ct. 582, 587 (2020); Bullard v. Blue Hills Bank, 135 S. Ct. 1686, 1692 (2015). A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Vázquez Laboy v. Doral Mortg. Corp. (In re Vázquez Laboy), 647 F.3d 367, 372 (1st Cir. 2011) (quoting Riley v. Kennedy, 553 U.S. 406 (2008)) (internal quotation marks omitted). Here, the Order Authorizing Lease definitively disposed of the parties' dispute about the Lease in the context of the chapter 12 cases and, therefore, it is final. Cf. Ritzen Grp., Inc., 140 S. Ct. at 586; see also Milk Indus. Regulatory Office v. Ruiz Ruiz (In re Ruiz Ruiz), BAP

9

No. PR 19-023, 2020 WL 3264985, at *3 (B.A.P. 1st Cir. June 10, 2020) (stating that order approving lease of milk quota was final), <u>appeal docketed</u>, No. 20-9009 (1st Cir. Sept. 1, 2020). Accordingly, we have jurisdiction to hear this appeal.

## STANDARD OF REVIEW

Although neither the Debtors nor the bankruptcy court cited § 363 or any other legal authority for granting the Motion to Lease, § 363 provides the appropriate statutory basis for the requested relief. <u>See</u> <u>In re Ruiz Ruiz</u>, 2020 WL 3264985, at *5 n.3. Generally, a bankruptcy court's order authorizing the use, sale, or lease of property of the estate under § 363 is reviewed for an abuse of discretion. <u>See</u> <u>Rogers v. Gladstone (In re Bardos)</u>, BAP No. CC-15-1217-FDKu, 2016 WL 1161225, at *4 (B.A.P. 9th Cir. Mar. 23, 2016) (citation omitted). "A court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact." <u>De Jounghe v. Lugo Mender (In re De Jounghe)</u>, 334 B.R. 760, 765 (B.A.P. 1st Cir. 2005) (citation omitted).

Legal questions regarding the proper interpretation of state statutes and administrative regulations are subject to the rules of statutory construction. <u>See</u> <u>Fed. Refinance Co. v. Klock</u>, 352 F.3d 16, 25 (1st Cir. 2003) (citing <u>Salve Regina Coll. v. Russell</u>, 499 U.S. 225, 231 (1991), and <u>Protective Life Ins. Co. v. Dignity Viatical Settlement Partners, L.P.</u>, 171 F.3d 52, 54 (1st Cir. 1999)); <u>Morales v. Sociedad Española de Auxilio Mutuo y Beneficencia</u>, 524 F.3d 54, 57 (1st Cir. 2008) ("Determining a regulation's meaning requires application of the same principles that imbue exercises in statutory construction.") (citations omitted). We review questions of statutory construction de novo, <u>Pellegrino v. Boyajian (In re Pellegrino)</u>, 423 B.R. 586, 589 (B.A.P. 1st Cir. 2010), which means that we are "not bound by the bankruptcy court's view of

the law." <u>Banco Cooperativo de P.R. v. Ramos Herrera (In re Ramos Herrera)</u>, 589 B.R. 444, 451 (B.A.P. 1st Cir. 2018) (citation omitted) (internal quotation marks omitted).

## DISCUSSION

### A.     The Sale, Use, or Lease of Property of the Estate

With a few exceptions not relevant here, a chapter 12 debtor in possession has all the rights, powers, functions, and duties of a chapter 11 trustee. <u>See</u> 11 U.S.C. §§ 1203, 1204, 1207(b). These include the right to continue to operate the debtor's business in the ordinary course, <u>see</u> 11 U.S.C. § 1203, and the right to use, sell, or lease property of the bankruptcy estate both "in the ordinary course of business" and "other than in the ordinary course of business." <u>See</u> 11 U.S.C. § 363(b)(1) & (c)(1). Activities that are in the ordinary course of the debtor's business may be conducted without first obtaining court approval, but any use, sale, or lease of estate property outside the ordinary course of the debtor's business requires notice and a hearing. <u>See</u> 11 U.S.C. § 363(b)(1) & (c)(1).

A bankruptcy court "enjoys considerable discretion" with respect to motions brought under § 363(b). <u>White v. Official Comm. of Unsecured Creditors (In re Cadkey Corp.)</u>, 317 B.R. 19, 22 (D. Mass. 2004) (citation omitted). When considering whether to authorize a debtor-in-possession's use, sale or lease of property of the estate, courts usually apply a "business judgment test" and will approve the motion "where the debtor has used reasonable business judgment and articulated a business justification for such use." <u>In re SW Bos. Hotel Venture, LLC</u>, No. 10-14535-JNF, 2010 WL 3396863, at *3 (Bankr. D. Mass. Aug. 27, 2010) (citations omitted). In other words, when evaluating these requests, the court's focus should be squarely fixed on the utility of the proposed sale, use, or lease to the estate and, by extension, the constituents of the estate. Simply put, the analysis is a bankruptcy, not a regulatory, analysis.

11

"This does not, however, preclude the [c]ourt from examining state law to determine whether there are any conditions which must be met prior to sale [or lease of estate property]." In re Borne Chem. Co., 54 B.R. 126, 131 (Bankr. D.N.J. 1984) (citing Artus v. Alaska Dep't of Labor (In re Anchorage Int'l Inn, Inc.), 718 F.2d 1446 (9th Cir. 1983)) (considering § 363(b) sale under analogous "best interest of the estate" test); see also In re Canarico Quarries, Inc., 466 F. Supp. 1333, 1339 (D.P.R. 1979) (stating that a debtor-in-possession must "operate its business in full compliance with the laws and regulations of the State").

Under the business judgment test, the debtor has the initial burden of establishing that it has properly exercised its business judgment. In re New Bedford Capacitor, Inc., No. 01-14680-JNF, 2003 WL 25889620, at *5 (Bankr. D. Mass. June 27, 2003). Parties opposing the proposed exercise of a debtor-in-possession's business judgment then bear the burden of rebutting the presumption of validity. In re Genco Shipping & Trading Ltd., 509 B.R. 455, 464 (Bankr. S.D.N.Y. 2014) (citation omitted).

Ignoring, for the moment, the import of Regulation No. 8660 (which we address below), we have little difficulty concluding that the Debtors properly exercised their business judgment and that the bankruptcy court did not abuse its discretion by authorizing them to enter into the Lease. The Debtors established that the income from the Lease was essential to the survival of their business. They detailed why they were unable to produce enough milk to satisfy their quota and, consequently, why they needed the income from the Lease to make its payments to Condado. Many of the Debtors' milking cows had died or were nearing the end of their production life and the passing of Hurricane Maria in September 2017 severely affected the Debtors' operations and cow health. They also highlighted that the confirmed Plan expressly contemplated that 37,500 liters of milk quota were, at the time of confirmation, being leased to

12

third parties under the Prior Leases and that the Debtors would continue to lease their milk quota to generate income to fund the Plan. And, as two of the Prior Leases, totaling 18,000 liters, were set to expire in November 2019, the Debtors needed the Lease to replace one of the expiring leases in order to continue making payments to Condado under the Plan. But for the import of Regulation No. 8660, this would be the end of story. But the Debtors and ORIL disagree about how Regulation No. 8660 operates in the context of chapter 12. As a result, we turn to an examination of Regulation No. 8660.

**B.      Puerto Rico Law and Regulations Governing Milk Quota Leases**

**1.      The Milk Quota Act and Regulation No. 8660**

Puerto Rico Act No. 301 of September 2, 2000, commonly known as the Puerto Rico Milk Industry Production Quota Transactions Registry Act (the "Milk Quota Act"), was enacted to create a registry of milk quota transactions in Puerto Rico and to uniformly regulate all such transactions. See P.R. Laws Ann. tit. 5, §§ 1126-1139. Lease transactions are specifically regulated under the Milk Quota Act, which provides in relevant part:

> Any milk producer may lease a portion or the total amount of his quota up to a maximum of five thousand (5,000) quarts of milk every fourteen (14) days, provided that both the lessor and the lessee possess a valid license to operate a first class dairy issued by the Office. A producer may acquire by lease the amount of quotas he desires.
> . . . .
>
> Leasing quotas of more than five thousand (5,000) quarts of milk every fourteen (14) days is hereby prohibited, except in those cases where the dairy production is affected by any catastrophic event or by any cattle disease. Under said circumstances, the milk producer may request a special permit [from] the administrator and the governing board that administers the price stabilizing fund in order to [exceed] the maximum allowed by law. Said permit shall be approved by the Administrator and by the Governing Board that administers the Price Stabilizing Fund. . . .

P.R. Laws Ann. tit. 5, § 1136.

The act is generally read in conjunction with ORIL's companion regulation, Regulation No. 8660. It provides in relevant part:

1. Dairy farmers may lease out up to a maximum of 5,000 quarts . . . .

2. The lease agreement shall have a maximum term of one year and may be renewed if the Parties decide so. The lease agreement is not transferable.

3. Leasing more than 5,000 quarts shall only be allowed when an unforeseen event takes place as defined in these Regulations *or [in] active cases before the Federal Bankruptcy Court*. In these cases, the Administrator shall evaluate each case and, at his or her discretion, shall determine whether or not to authorize the quart lease in excess of what is established in this Article.

   A request for lease in excess of the regulatory limit must be submitted in writing, sworn to before a Notary Public, specifying the reasons for requesting this authorization. This request must include the documents that would allow the Administrator to evaluate the request in an adequate and responsible manner.

4. The lease agreement must be submitted in a legal document and must contain at a minimum the following information:
   a. amount of quarts to be leased
   b. lease period
   c. lease price per quart
   d. signature of lessor and lessee[.]

5. Both the lessor and the lessee must have current Department of Health and Office licenses and shall be in compliance with the regulations of both offices. . . . .

8. In the case of dairy farmers under the Federal Bankruptcy Law, the request [to] lease in excess of 5,000 quarts must be submitted in writing and in a legal document. *It must make reference to the Federal Bankruptcy Court Order and establish that [the lease] is being made in order to comply with the Payment Plan provided by said Forum. Furthermore, the request must include the documents submitted [to] and issued by the Federal Bankruptcy Court in relation to the lease request. . . .*

Regulation No. 8660, § 7(B) (emphasis added).

The plain language of Regulation No. 8660 forecloses ORIL's argument that the bankruptcy court abused its discretion by granting the Debtors' motion before ORIL approved the request under Regulation No. 8660. On its face, the regulation contemplates that a debtor

14

that seeks to lease in excess of 5,000 quarts of milk quota must submit a request to ORIL. That request must make reference to an order of the bankruptcy court; in fact, the regulation requires that the request be accompanied by the court's order. To this extent, we agree with the Debtors.

This is not to say, however, that federal policy and federal bankruptcy law preempt or override the Milk Quota Act and Regulation No. 8660. The provisions of the Bankruptcy Code preempt state laws, such as the Milk Quota Act and Regulation No. 8660, only if they are in conflict with federal law. See Stellwagen v. Clum, 245 U.S. 605, 613 (1918); FDIC v. Torrefaccion Cafe Cialitos, Inc., 62 F.3d 439, 443 (1st Cir. 1995). However, § 363(b)(1), which authorizes the bankruptcy court to approve a debtor's request to lease property of the bankruptcy estate, and Regulation No. 8660, which sets forth a mechanism for dairy farmers to seek an exception to the cap on milk quota leases, are not in conflict. Therefore, we do not agree with the bankruptcy court that ORIL's discretion under Regulation No. 8660, as described here, is preempted by the Bankruptcy Code. In this respect, we are persuaded by another decision of the United States Bankruptcy Court for the District of Puerto Rico, In re Ortiz-Colon, No. 19-01384 (ESL), 2019 WL 4744911 (Bankr. D.P.R. Sept. 27, 2019).

In In re Ortiz-Colon, the bankruptcy court examined the bankruptcy exception in Regulation No. 8660, ruling that the debtors could lease in excess of 5,000 quarts of their milk quota over ORIL's objection provided they complied with the regulatory procedures set forth in Regulation No. 8660. The chapter 11 debtors in Ortiz-Colon owned a dairy farm in Hatillo, Puerto Rico, with a biweekly milk production quota of 93,000 liters. Id. at *1. In the pre-confirmation stage of their case, the debtors sought leave to lease 10,000 liters of milk quota to another farm in exchange for biweekly payments of about $1,000. Id. They stated they would use the lease income to pay their main secured creditor and to purchase more heifers so that they

15

could make their full milk quota in the future.  Id.  ORIL objected, seeking to limit the lease to the 5,000-quart cap.  It argued, as it does here, that allowing the debtors to lease more than 5,000 quarts would contravene Puerto Rico law and regulations.  Id.

The Ortiz-Colon court recognized that the bankruptcy exception of Regulation No. 8660 "does not authorize *ipso facto* a lease in excess of the statutory and regulatory limitations," but rather provides "a mechanism to seek an exception from the agency [ORIL]."  Id.  In granting the debtors' motion to lease milk quota, the bankruptcy court addressed the business judgment aspects of a § 363(b) analysis by acknowledging that the lease would enable the debtors to repay their primary secured creditor, which was "key" to confirming a chapter 11 plan.  Id. at *2.  It stressed, however, "that the process does not end with such a determination.  The debtors must further comply with [Regulation No. 8660] procedures and present the request to ORIL for approval."  Id.  In so ruling, the Ortiz-Colon court implicitly recognized that debtors seeking to exercise the bankruptcy exception set forth in Regulation No. 8660 must engage in a two-step process: they must first obtain bankruptcy court authority to enter into the proposed lease before seeking approval from ORIL.

Here, despite its insistence in the proceedings below that dairy farmers are required to obtain ORIL's authorization of the proposed lease prior to seeking bankruptcy court approval, ORIL conceded at oral argument that although its proffered interpretation is "preferred," the bankruptcy court's approach in In re Ortiz-Colon is also acceptable.  In other words, a bankruptcy court would not err in granting a motion to lease in excess of 5,000 quarts provided the lease makes sense from a "business judgment" perspective.  See In re SW Bos. Hotel Venture, LLC, 2010 WL 3396863, at *3.  As discussed above, the Debtors in this case passed

16

this threshold and, therefore, the authorization of their lease in excess of 5,000 quarts was proper under a § 363(b) analysis.

However, as we stated earlier, the bankruptcy court's authorization of a lease of milk quota in a chapter 12 case does not preempt or obviate ORIL's regulatory authority to determine whether such lease is appropriate. ORIL's determination differs from the bankruptcy court's analysis—for ORIL, the question is not whether the lease makes business sense but whether it makes sense from a regulatory standpoint.[5] Thus, the bankruptcy court's authorization of a lease of estate property is only part of the procedure to obtain approval of a lease under Regulation No. 8660. The Debtors, after obtaining bankruptcy court authorization, must still present their request to ORIL for ultimate approval. The Ortiz-Colon court recognized this proposition, highlighting that after obtaining bankruptcy court approval of the motion to lease, the debtors were required to further comply with regulatory procedures and present the request to ORIL for approval. See In re Ortiz-Colon, 2019 WL 4744911, at *2.

We agree. Chapter 12 debtors who seek to lease milk quota in excess of the statutorily authorized limit must engage in a two-step process: they must first seek approval from the bankruptcy court and then from ORIL consistent with the requirements of Regulation No. 8660. So, while we affirm the decision of the bankruptcy court, we do so on a different foundation. See Hoover v. Harrington (In re Hoover), 828 F.3d 5, 8 (1st Cir. 2016) (stating that appellate courts may affirm the bankruptcy court's decision on any ground apparent by the record) (citations omitted); Buntin v. City of Bos., 813 F.3d 401, 404 (1st Cir. 2015) (observing that appellate court is not "wedded" to the lower court's reasoning, but may affirm "on any basis

---

[5] At oral argument, ORIL indicated that, when determining whether to authorize a lease, it looks at various farmer and industry specific factors, which is the purpose of such a regulatory body—subject area expertise.

17

made evident by the record") (citation omitted); <u>In re Francis</u>, 604 B.R. 101, 106 n.2 (B.A.P. 1st Cir. 2019) (stating the Panel "may affirm on any basis apparent in the record") (citing <u>Young v. Wells Fargo Bank, N.A.</u>, 717 F.3d 224, 237 n.11 (1st Cir. 2013)).

## **CONCLUSION**

Based on the above-described rules of statutory construction and cases involving the application of § 363(b), we conclude the bankruptcy court did not abuse its discretion in granting the Motion to Lease, and we **AFFIRM** the Order Authorizing Lease.